## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

## JULY TERM, 1862.

———

### [CONTINUED FROM VOLUME VII.]

———

WILLIAM E. BRIMHALL, Respondent, *vs.* BENJAMIN VAN CAM-
PEN, Appellant.

#### APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

An action cannot be sustained, under the laws of this State, upon a note executed on Sunday.

The laws of sister States are to be proven like other facts. Courts cannot take judicial notice of them.

In the absence of proof to the contrary, the Courts of this State will presume that the laws of other States are the same as our own.

Upon a valid subscription of funds towards the erection of a bridge, according to certain plans, &c., payable on demand, an action will lie for the recovery of the subscription, before the erection of the bridge. Had the subscription been paid, and the contractor failed to erect the bridge, the contributor would have had an action for damages for breach of the contract. But when the sub- scription was not paid, and the bridge not built as agreed upon, the failure to perform the con- tract can be pleaded in defense of an action for the sum subscribed, or in reply to it when offered as an offset.

vol. viii.—3

The following is the report of the facts and conclusions of law, as found by James Smith, jr., referee in this cause :

That the undersigned having been duly sworn as such referee, was duly attended by the said parties and their respective attorneys, who appeared before him from time to time ; that he has heard the proofs and allegations of the respective parties and arguments of counsel, and that having duly considered the same he finds, decides and reports as follows, viz. :

I find for and as matters of fact that the Defendant made the said promissory note, in the complaint named, at the town of Fredonia, in the State of New York, on a Sunday ; that the said note bears date the 30th of July, 1858 ; and that the said Defendant, for a valuable consideration, thereby promised to pay, ninety days after said date, to the order of Joseph Daniels, at the banking house of Irvine, Stone & McCormick, in the city of Saint Paul, in said Ramsey county, five hundred dollars, with interest at the rate of two per cent. per month, and if not paid at maturity, interest after maturity payable at the rate of five per cent. per month ; that after the making and delivery of said note, the said Daniels, then being the owner and holder thereof, after maturity, and on the 16th day of November, A. D. 1858, endorsed and delivered the said promissory note to the Plaintiff, and that on the date last aforesaid said Plaintiff, became, and from thence hitherto has continued the owner and holder of said note ; that there was due on said note at its maturity the sum of five hundred and thirty dollars. I further find that on the 10th day of April, A. D. 1858, the Defendant was, and during the residue of said winter continued to be, the Road Supervisor of Cannon Falls, in the county of Goodhue, and that with the consent, and by the authority and permission of the Board of County Supervisors of said county of Goodhue, and of the Town Supervisors of said town of Cannon Falls, the said Defendant was authorized to contract for the construction of a good suspension bridge over the Cannon River at said town of Cannon Falls, one half of the cost of which, not exceeding the sum of $1,500, the said authorities of Goodhue county agreed to pay, the residue of the cost of construction of the same the said Defendant had

authority to raise by subscription of persons interested in the construction of said bridge at the place aforesaid. That the said bridge so authorized to be constructed was a suspension bridge, upon the plan of Howe's patent, so called, a model of which, on said 10th of April, 1858, had been made, pursuant to the instance of said Supervisors and approved by said authorities and by said Joseph Daniels; that on said last named day the said Joseph Daniels was interested as one of the proprietors of the village of Cannon Falls, in the erection and maintainance of a good suspension bridge over said Cannon River, and that in consideration thereof, and in consideration of the agreement of said authorities on behalf of said county of Goodhue to pay one half of the cost of such bridge, said half not to exceed said sum of $1,500, and in consideration of the subscriptions and agreements of the said other subscribers to the same, and of the said Defendant as said Supervisor to cause the erection of said bridge, the said Joseph Daniels— the payee in said promissory note named—made with said several other parties an agreement in the words and figures following to wit:

" Cannon Falls, April 10, 1858. We, the subscribers, agree to pay to the Road Supervisor of Cannon Falls the several sums set opposite to our names, for the purpose of building a good suspension bridge over the Cannon River on Bridge street, where the Henderson and Red Wing Territorial Road crosses said river. Said several sums to be paid on demand."

That said Joseph Daniels, as one of the subscribers to said subscription paper, by his agent in that behalf duly authorized, signed the same and designated as the sum to be by him paid for said purpose, the sum and amount of $300; that persons other than said Daniels (and others than said Goodhue county subscription) subscribed for said purpose, and upon said subscription paper, to the amount of, in the aggregate, $910. That it was thereupon, between said Daniels and said Supervisor, understood and agreed that the building of said bridge should be let to the lowest and best bidder, and the same should be erected under a contract and specifications for the construction of the same, according to the plan and model exhibited. That notice of said letting was given and said

contract awarded to one Horace Scranton.    That a contract was made in pursuance thereof, bearing date the 23rd of May, 1858, between said Scranton, of the one part, and said Van Campen, as such Road Supervisor, of the other part.    That said Scranton thereby agreed and covenanted with the other party to erect, build and finish, in a good, substantial and workmanlike manner, a suspension bridge across the said Cannon River, at the point in said subscription paper named, where the said Red Wing and Henderson Territorial Road crossed said river, according to the plans and specifications thereto annexed, said Scranton to furnish all the materials for the full completion of said bridge, and have the said bridge finished by the first day of September, 1858.    The said Scranton to receive for building said bridge the sum of $3,090, to be paid at such times and in such manner as should be mutually agreed upon by and between said parties.    That for the full and faithful performance of said agreement by said parties, on their respective parts, they severally bound themselves to each other in the sum of five hundred dollars, as fixed and settled damages.

(The report then states the particular specifications which were made a part of said contract.)

That endorsed upon said agreement is a bond and written obligation, in the penal sum of $4,000, to said Van Campen, as such Supervisor, executed by said Horace Scranton, as principal, and Charles Parker, F. A. Barnes and James McGinnis, as sureties, reciting the said bridge contract and conditioned for the performance of the same, on the part of said Scranton, which is dated of the date of May 25, 1858; that said Van Campen caused the said agreement and specifications and bond to be drawn, and also a certain agreement of assignment to be annexed to said bridge contract, which said agreement of assignment is as follows:

"In consideration of the sum of one hundred dollars, to me in hand paid by Benjamin Van Campen, of Cannon Falls, the receipt whereof is hereby acknowledged, I do hereby transfer, assign and set over to the said Benjamin Van Campen, his heirs and assigns, all my right, title and interest in and to the within contract; and I do hereby constitute the said Benjamin

Van Campen my attorney, in my name or otherwise, but at his own cost and charge, to go on and build the said bridge, according to the terms of the within contract. Witness my hand and seal this 25th day of May, A. D., 1858."

That said agreement and said assignment thereto annexed, was, on or about the 25th day of May, A. D. 1858, delivered at the same time, by said Defendant to said Scranton, with a request that he should sign the same, and thereupon he, said Scranton, did sign and seal said agreement and assignment thereof, and then re-deliver the same to said Van Campen, the same being one transaction. That after said letting, and before said assignment, it was agreed between said Defendant and said Scranton, that said Scranton should receive the moneys to be paid upon said subscription paper named, and the amount to be paid by Goodhue county, as aforesaid, as the price and compensation provided.in said bridge contract to be paid said Scranton. I further find that a good suspension bridge, according to the principles of Howe's patent, under said specifications; and according to said model, might have been erected over said river. That said Van Campen, shortly after the making of said contract, assumed, as assignee thereof, to construct said bridge, but that in the construction thereof, the abutments for the same were not erected according to said specifications, and that the same were not erected in a good and workmanlike manner, and for that reason became insecure before placing the superstructure thereon, and that the superstructure of said bridge, so far as erected, was not in accordance with the said model; that the stringers used in the superstructure of said bridge were not of a sufficient length to give strength thereto, and that after the placing of the timbers upon said bridge, and before the road bed thereof was laid so as to enable it to be used for the purposes of a bridge, and on or about the middle of October, 1858, and whilst the Defendant was still engaged in the construction thereof, the said bridge, by reason of the defective construction thereof, as aforesaid, broke down from its own weight, and became of no use as a bridge, and that no suspension bridge has in fact ever been erected by said Scranton or his assignee, or other person, other than the defective structure

aforesaid over said river. That thereupon (on the falling of said bridge) the said Defendant abandoned the construction of a suspension bridge, and without the consent of said Daniels, proceeded to erect, in lieu thereof, a bridge with a center pier, not in accordance with said model. That the construction of a suspension bridge, as contemplated by said subscription paper, model and specifications, then was and ever since has been and is wholly abandoned by said Defendant.

I further find that Defendant, on or about the 20th day of June, 1858, demanded of said Daniels payment of said subscription, which was refused.

I further find, that whilst said Daniels was the owner and holder of the said note, and before notice to said Defendant of the said transfer thereof, and before the commencement of this action, the said Joseph Daniels was indebted to the said Van Campen upon the matter of account and offset, set up in the Defendant's original and amended answer to the sum and aggregate amount of two hundred and forty-three dollars after deducting payments thereon. I further find,¹ as conclusions of law, arising from the facts so found, that there was due upon said note, at the date of the said transfer thereof, the sum of five hundred and thirty-one dollars and forty-two cents, for principal and interest to that date, subject to a setoff and deduction of the sum of two hundred and forty-three dollars, and no more. That said item for bridge subscription in said answer set up, is not a legal or proper matter of setoff, and that there is a balance due the Plaintiff and unpaid of two hundred and eighty-eight dollars and forty-two cents, with interest thereon at the rate of seven per cent. per annum, from November 16, 1858, amount of principal and interest at the date of this report, to the sum of three hundred and forty-nine dollars and fifty-four cents ($349 54), for which last-named sum judgment is directed to be entered in favor of the said Plaintiff and against the said Defendant, with legal costs and disbursements.

Points and Authorities for Appellant.

I.—Joseph Daniels was not a party to the bridge contract.

This contract was between the proper authorities of Goodhue county, of the one part, and Scranton and his assignees of the other.

II.—Daniels and others signing the subscription paper, by the act of their subscription, constituted the authorities of Goodhue county, their trustees for the disbursement of the moneys subscribed, for the discharge of which trust the contractor was in no way or manner responsible.

III.—By signing the subscription paper, on the faith and credit of which others subscribed, and the enterprise was undertaken, Daniels became indebted thereon in the sum of $300. 1 *Parsons on Contracts, p.* 377 *and note* (o) *and cases cited ; Ib.* 378 *and notes, and cases cited ;* 12 *Mass.,* 190; 4 *N. H.,* 533; 6 *N. H.,* 164; 20 *John,* 89; 9 *Barb.,* 202; 7 *John,* 112; 1 *Comstock,* 581; 5 *Pick.,* 228; 14 *Mass.,* 172; 6 *Pick.,* 433 ; 2 *Vt.,* 48; 9 *Id.,* 289; 5 *Pick.,* 507.

IV.—The indebtedness so raised was in its nature transferable, like any chose in action and before any equity or defence had arisen against it in the hands of the assignor, the same was actually transferred to the Appellant, who became as lawfully entitled to recover the money of Daniels, as he would to hold and retain the money had the same been in the first instance paid over to the county authorities and by them turned over to Van Campen.

V.—In June, A. D. 1858, the contractor and assignee of this chose in action demanded payment of Daniels. There was no failure to erect the suspension bridge until October ensuing, four months afterwards. At the time of this demand Daniels' liability on the subscription was perfect and the withholding of payment was a wrong, for the money was payable on demand, and not on the completion of the work.

VI.—The erection of a pier bridge in lieu of a suspension bridge does not in the slightest degree relieve Daniels from his subscription contract. The case does not show this change in the plan of the bridge was a change in any material respect, or in any way lessened the value of the structure to any subscriber. That other subscribers did not so regard it appears from the fact that they also paid their subscription.

VII.—The note in question was made on Sunday, in the

State of New York.   Such a contract made in this State could not be enforced.

*Public Statutes of Minn., p.* 730; *Watts vs. Van Ness,* 1 *Hill,* 76; *Hilton vs. Houghton,* 35 *Maine,* 143; *Nason vs. Densmore,* 34 *Id.* 391.

The laws of New York on this subject not having been proved on the trial, are presumed to be the same as our own. *Cooper & Lavely vs. Reaney,* 4 *Minn.,* 528. So the validity of this contract must depend on our laws.

Points and Authorities for Respondent.

I.—The first point in this case to be considered by the Court is, whether the promissory note in question is a New York or a Minnesota contract.

The referee finds it was made on Sunday, in the State of New York.

The validity of the contract depends upon the law of the State where it had its first inception. *Story on Prom. Notes, sec.* 155, *and cases therein cited.*

A promissory note made in New York on Sunday is good. *N. Y. Rev. Stats., Vol.* 2, *p.* 83; 13 *Wend.,* 429; 8 *Conn.,* 27; 12 *Wend.,* 57; 1 *Hill,* 76; 2 *Sand.,* 318.

2d. Even though the note was a Minnesota contract, still it would be valid under our statute. *Comp. Stat. p.* 730.

II.—The subscription paper or contract was without any legal consideration, and void. *Academy vs. Davis,* 11 *Mass.,* 113; 14 *Mass.,* 172; 2 *Pick.,* 578; 5 *Pick.,* 507; 6 *Pick.,* 427; 1 *Comstock,* 581; *same case,* 2 *Denio, p.* 420.

III.—Under the pleadings in this action a substantial completion of a good suspension bridge is a condition precedent to entitle the Appellant to recover the subscription money.

IV.—The fact that the subscription paper called for a good suspension bridge is a sufficient answer to the first, second and third points of the Appellant.

V.—The Appellant had no authority as Road Supervisor to assign the amount subscribed in payment for the construction of said bridge without the consent of all the subscribers.

VI.—The referee finds that Scranton took the money sub-

scribed in payment for the building of said bridge, but does not find that the same was ever by said Scranton assigned to the Appellant.

VII.—The written assignment found by the referee is wholly silent as to the subscription money.

VIII.—The facts found by the referee leave this matter precisely as though there had never been any attempt to construct this bridge, and the whole enterprise had been abandoned in 1858.

IX.—The facts found by the referee show conclusively that there never was even an attempt on the part of the Appellant, in good faith, to construct a bridge in accordance with the terms of said subscription.

X.—It would be an outrage upon common justice to say that Daniels should be held liable to pay this subscription upon the state of facts found by the referee.

GEO. L. & E. A. OTIS, Counsel for Appellant.

DANIELS & GRANT, Counsel for Respondent.

*By the Court*—FLANDRAU, J.—The referee finds as a matter of fact that the note upon which this action is founded was made in the State of New York, and that it was executed on Sunday. He does not find, as a further fact, what the law of New York upon the subject of contracts executed upon the Lord's Day is, or whether it in any way differs from our own. The statute and common law of our sister States are facts to be proved, as any other facts in a cause, by the party who seeks to take advantage of any difference that may exist between such laws and our own. Our courts can take judicial notice of no laws but our own, and those enacted by the federal government. In the absence of proof concerning the laws of other States, the Courts presume they are the same as our own, and decide accordingly. We had occasion to apply this very familiar rule in the case of *Cooper & Lavely vs. Reaney,* 4 *Minn. R.,* 528.

The report of the referee, then, leaves a note executed on Sunday to be subjected to trial under the laws of this State. Our law is as follows :

vol. viii.—4

" No person shall keep open his shop, warehouse, or work-house, or shall do any manner of labor, business or work, except only works of necessity and charity," &c., and then imposes a fine for the violation of its provisions. *Comp. Stats.* 730, *sec.* 19. In the case of *Solomon vs. Dreschler,* 4 *Minn. R.,* 278, we considered the question of the validity of acts done in violation of statutory prohibitions. The various distinctions that have arisen upon such statutes, are there pointed out, and the cases cited. We held that the proper rule is to "examine the statute as a whole, and find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not to be so," and under this rule we decided that liquor sold in violation of the license act could not be recovered for because the act evidently was designed to protect the public morals, as well as to add to the public revenue. This Sunday act can have no other object than the enforcement of the fourth of God's commandments, which are a recognized and excellent standard of both public and private morals. A violation of the act, therefore, is *contra bonos mores,* and cannot be sustained by the Courts. No action can be predicated upon a note made on Sunday.

In regard to the subscription of $300, made by Daniels to the bridge, being a valid offset to the Plaintiff's debt, we take this view. The subscription was valid, and being payable on demand, could have been recovered at once, even before the erection of the bridge. Had the subscription been paid, and the contractor failed to erect the bridge, the contributor would have had an action for damages for the breach of his contract. As the subscription was not paid, and the suspension bridge, towards which it was donated, was not built, as agreed, the failure to perform the contract can be pleaded in defence of an action for the sum subscribed, or in reply to it when offered as an offset. The referee having found that no suspension bridge was erected, he was right in relieving Daniels from the subscription. No one could change the purpose for which the subscription was made, so as to bind Daniels without his consent.

The judgment is reversed, and the case remanded to the District Court, whence it came.