THE STATE OF MISSOURI, Respondent, v. W. F. LOGAN, Appellant.

**Kansas City Court of Appeals, June 4, 1900.**

1. **Criminal Law: PLACE FOR OPTION DEALING: EVIDENCE: INFERENCE.** The evidence relating to the issue whether defendant kept a place for option dealing is reviewed and, while the language of the guarded testimony negatives the fact, the plain inference from the whole evidence negatives the language used by the witnesses and sustains the affirmative verdict.

2. ———: ———: **PLACE OF CONTRACT: AGENCY: INSTRUCTION.** A further review of the evidence supports the verdict that the contracts were made with the defendant and that his agency to make the purchase or sales for his customers in Chicago was a subterfuge; and the instructions properly submitted the issue of the agency to the jury.

Appeal from the Cooper Circuit Court.—*Hon. Samuel Davis,*
Special Judge.

AFFIRMED.

*Harkless, O'Grady & Crysler, John Cosgrove* and *C. D. Corum* for appellant.

(1)    There is not a particle of testimony in this record, to the effect that the place kept by defendant was a place where there was buying or selling of stock, bonds, petroleum, provisions, cotton, grain or agricultural products on margins or otherwise without the intention of receiving and paying for the property or of delivering the property; or that the party buying or selling did not intend to actually receive the same if purchased or deliver the same if sold; but on the contrary, each and every witness for the state, as well as for the defense, positively show that the transactions were legitimate in every particular; and we challenge the record upon this question; and in the absence of such proof the defendant should have been discharged. Deierling v. Sloop, 67 Mo.

App. 446. (2) In addition to this the testimony all shows without contradiction that there was no buying or selling or offer to buy or sell any of the articles mentioned in section 3933 in Cooper county; the defendant simply acted as an agent in taking orders to be executed for its customers on the board of trade in Chicago, Illinois, and there was no buying or selling in Cooper county of any kind, and the transaction was completed and consummated beyond the limits of the state; hence the defendant should be discharged by this court. State v. Gritzner, 134 Mo. 512; Johnson v. Miller, 53 S. W. Rep. 1052; Crawford v. Spencer, 92 Mo. 498.

*Ernest Chambers* and *J. F. Rutherford* for respondent.

(1) There is ample evidence to support the verdict of guilty, and where there is any evidence from which the jury might reasonably have found their verdict, this court will not interfere. Williams v. State, 9 Mo. 270; State v. Glahn, 97 Mo. 679; State v. Howell, 100 Mo. 628. (2) The place kept by the defendant was in Cooper county, Missouri, and the persons who bought and sold the commodities mentioned in the indictment had no communication whatever with any other person, in regard to these dealings. This case is not at all similar to that of State v. Gritzner, cited by appellant. The theory that these deals were made in Chicago was fairly presented to the jury in instruction number 12, given at the request of the defendant.

ELLISON, J.—Defendant was indicted and convicted for violating the provision of section 3933, Revised Statutes, 1889, imposing a penalty for keeping a place where dealing in "margins" and "futures" in stocks and agricultural products is prohibited. That statute declares that it shall be unlawful for any person to keep a place wherein is conducted the buying or selling of stocks, grain or other products, either on margins or otherwise without any intention of receiving

and paying for the property so bought, or of delivering the property so sold; or, wherein is conducted or permitted the buying or selling of such property on margins when the party selling or offering to sell does not have the full amount of property on hand to deliver upon such sale, or when the party buying or offering to buy does not intend actually to receive the same if purchased, or to deliver the same if sold.

One of the chief objections urged against the judgment is that the evidence failed to show that defendant kept the place thus forbidden by the statute. We have gone carefully over the evidence and find that it amply supports the verdict. It is true that most of the witnesses used language in their guarded testimony that would, judged by the words alone, negative the requisites of the offense. But the plain inference from their testimony in many instances negatived the language used. If there is a cloudless sky at noon day the inevitable inference is that the sun is shining and a witness stating that it is not will not alter such inference. The defendant kept a room in the town of Boonville in which his main furniture was a black board and a telegraphic instrument. Market quotations from Chicago were kept posted on the board and grain (principally wheat) was bought "in the hundreds of thousands of bushels." Though the witnesses stated that they expected to deliver the wheat when sold and expected to receive it when bought, yet in all the time these "deals" were going on in defendant's place no wheat was ever delivered by the "seller" or received by the "buyer." The plain reason for this was that no seller ever had any to sell and no buyer ever saw any he bought. Though those who frequented the place were in a constant state of expectancy there was never a realization.

The mode of conducting the business, as described by witnesses without quoting literally their language, was for a prospective buyer or seller to go into defendant's place and employ him as agent to buy or sell, as the case might be, on

the Chicago market. They would pay defendant a commission. They never paid for any wheat for the reason that they never received any; but they were required to deposit what was termed a "margin." So that in point of fact, as defendant would wish it to appear, the dealers who patronized his room engaged him to place their deals, paying him a commission and depositing a margin. That he would telegraph the deal to an intermediary party at Kansas City who would in turn telegraph it to Chicago, dividing the commission with defendant. The evidence does not show who acted at Chicago for the Kansas City party, but necessarily some agent must have been there and witness Street of the Kansas City house, stated that the deposit required would protect defendant and defendant would protect his house and his house, in turn, "would protect the man that we do business with and so on."

But it is urged that this did not make a case of buying or selling at defendant's place at Boonville—that there was a mere order given there to be communicated to Chicago and that the sale or purchase was made in Chicago. And that therefore defendant should be declared not guilty on the authority of the case of State v. Gritzner, 134 Mo. 512. That case was for sale in the manner prohibited, and arose under sections 3931 and 3932, while this case is for the keeping of a place and arises under section 3933. The trial court gave full effect to the decision in the case cited by directing the jury that if the place was kept by defendant for the purpose of placing the deals by telegraphic orders with other parties in Chicago, to be there accepted or rejected, to find him not guilty. Under this instruction the jury must have found that the purchases, offers to purchase, sales and offers to sell, that is to say, the deals, were made by the patrons of the place with the defendant himself, and that his agency to make the purchase or sale for them in Chicago was a subterfuge. We think there was evidence sufficient to justify the jury in re-

jecting the hypothesis of that instruction. The jury doubtless considered, not only the mere statement of witnesses, but likewise the circumstances of the case, and the extraordinary nature of the transactions.

In the case of Crawford v. Spencer, 92 Mo. 505, the court uses this language: "If we look to the bare assertion of the parties on the one side and the other, we might well conclude that plaintiff has failed to make out a case; but if we look to the attending circumstances, which we must do, we can but conclude that these transactions, as between the plaintiff and the brokers, were mere speculations upon the future price of wheat and corn, with a complete understanding on the part of both, that no grain was, in any case, to be received or delivered. It is true that the contracts were all made in the names of the brokers, the name of the real principal not appearing; that they were in writing and under the rules of the exchange, the purchaser had the right to call for the commodity; but they were made by the plaintiff's brokers in compliance with their understanding with him, and, it is believed, with an implied understanding with the persons with whom the deals were made, that no grain was to be delivered." And in Schreiner v. Orr, 55 Mo. App. 411, the court says: "It has been repeatedly held by the appellate courts of this state that 'all the attending circumstances' of a contract for purchase or sale for future delivery, as well as the statements of the parties, are evidentiary. We can not hold from the circumstances of the contracts, the acts and doings of the parties thereunder, and their relative situations, that there was no substantial basis from which the jury could have justly inferred that it was the intention of Wilson and appellants that there should not be a delivery. The finding of the jury on this issue, under the facts and circumstances shown in this record, it not reviewable by us."

As illustrative, we quote from what we said in a case for the illegal sale of intoxicating liquor: "But even beyond all

this, the defense is so entirely devoid of merit, and this 'club' scheme such a palpable sham, that in my judgment, the lower court was justified in refusing to admit in evidence the so-called 'articles of association.' In the language of the supreme court of Illinois in a case quite parallel: 'All this is plainly a device on the part of the defendant to avoid the provisions of the law, and to enable him to sell intoxicating liquors at retail, as he had formerly done, without first obtaining a license to keep a dramshop. The whole thing was a subtle artifice, planned with a view to avoid the penalties denounced against persons violating the law.' " State v. Tindall, 40 Mo. App. 275. The instructions given covered the case and we discover no error in the refusal of some which were offered. So as to the rulings on evidence we can not see where any relevant to the issue on trial was excluded. The judgment is affirmed. *Smith, P. J.,* concurs; *Gill, J.,* absent.