McClanahan v. Payne & Campbell.

WILLIAM McCLANAHAN et al., Trustees, Appellants, v. PAYNE & CAMPBELL, Respondents.

Kansas City Court of Appeals, December 17, 1900.

1. **Appellate Practice:** TRIAL WITHOUT JURY: FINDING CONCLUSIVE. When a cause is submitted to the court without the aid of the jury its finding is conclusive if there is any substantial evidence on which to base it.

2. **Contracts:** SUBSCRIPTION: ACCEPTANCE. A gratuitous subscription is a mere offer which may be revoked at any time before its acceptance by the promisee which can only be shown by some act on his part whereby legal liability is incurred or money expended on the faith of the promise.

3. ————: MUTUAL PROMISES: CONSIDERATION: SPECIFIC AMOUNT. Though similar promises of others to the promisee may be a consideration between such others and the promisee, yet, they confer no benefit on another promisor and as to him constitute no legal consideration where the subscription does not provide for raising a specific amount.

4. ————: SUBSCRIPTION: AGENCY: NOTICE. The evidence shows that the defendants gave notice of withdrawing their subscription to plaintiffs' agent before plaintiffs received said subscription or had expended money on the faith thereof; and that such notice was notice to the plaintiffs.

McClanahan v. Payne & Campbell.

5. **Ratification:** EVIDENCE: PLEADING. A party can not have the benefit of either a ratification or an estoppel unless it has been pleaded.

**ELLISON, J., CONCURRING.**

6. **Contracts:** PERFORMANCE: FINDING OF TRIAL COURT: MEANING OF EVIDENCE. While the trial court made no special finding as to the railroad's performance of its agreement to establish and maintain a division at the agreed point, yet, its action on declarations of law shows that it found the contract in that regard had not been complied with; and the evidence sufficiently supports the finding since mere words of affirmation or denial by a witness can not control the evident meaning of his whole testimony or of the body of the evidence in the cause.

7. ——: CONTRACTS: ESTBLISHING OF DIVISION: SOLE CLAUSE. A subscription contract is held to mean that a railway company would establish and maintain a division at an agreed point, and the mere establishment without the maintenance is insufficient as a performance and will not warrant the enforcement of the payment of the subscription since one clause of a contract can not control the meaning of the whole, but it must all be taken together.

8. ——: FRAUD: WITHHOLDING DEEDS FROM RECORD. A charge that certain deeds were withheld from the record to keep their contents from the defendants is held unsupported by the evidence.

Appeal from the Livingston Circuit Court.—*Hon. E. J. Broaddus,* Judge.

AFFIRMED.

*Childers Bros., Frank Sheets* and *J. M. Winters* for appellants.

(1) The court erred in overruling plaintiff's objections to the introduction of any evidence in support of defendant's special pleas. None of said alleged defenses constitutes any defense at law or in equity. Shaffner & Veith v. Jeffries,

18 Mo. 512; Swain v. Hill, 30 Mo. App. 436; Moss v. Green, 41 Mo. 389; Buchel v. Lott, 15 S. W. Rep. 413; 2 Perry, 878; Edwards v. Welton, 25 Mo. 379. (2) The railroad company had failed to establish and maintain division headquarters at Milan, and had failed to erect building, etc. University v. Kincaid, 31 Pac. Rep. 1047; Conn. v. McCollough, 12 Mo. App. 356; Chamberlain v. Railroad, 15 Ohio St. 225. (3) That defendants' subscription was made upon condition that there should be ten subscribers of $500 or more. Shaffner & Veith v. Jeffries, 18 Mo. 512; David & Rankin v. Hendrix, 59 Mo. App. 444, and cases cited; Greenl. Ev., sec. 275; 2 Kent (13 Ed.), p. 556; Pearson v. Carson, 69 Mo. 550; State ex rel v. Hoshaw, 98 Mo. 358; Tuggles v. Callison, 143 Mo. 527. (4) That defendants revoked their subscription. Grocery Co. v. Beckett, 57 S. W. Rep. 458. (5) The court erred in excluding competent and legal evidence offered on the part of plaintiff. Snell v. M. E. Church, 58 Ill. 290; Buchel v. Lott, 15 S. W. Rep. 413.

*Wattenbarger & Bingham, Ellison & Campbell, Calfee & Calfee* and *L. A. Chapman* for respondents.

(1) No division headquarters was ever established at Milan, Mo. (2) The contract of subscription of the respondents was revoked before it was delivered to the appellants and before any money had been expended or liability incurred upon the faith of it. 1 Beach on Contr., sec. 206, p. 257; Hotel Co. v. International Military, etc., Co., 140 Ill. 248; Church v. Kendall, 121 Mass. 528; Curry v. Rodgers, 21 N. H. 247. (3) It can not be claimed that respondents had no right to revoke because others who had subscribed did so on the faith of respondents' subscription for the reason that the subscription contract in this case

does not provide for the raising of any particular sum. Kelly v. Oliver, 18 S. E. Rep. 698, 113 N. C. 442; Law v. Studebaker, 10 N. E. Rep. 301. (4) There was nothing paid out or any liability contracted on the faith of the subscription until the latter part of July, 1897. (5) A subscription contract is a continuing contract and stands as a mere offer. and may be revoked at any time before it is acted upon. Until acted upon there is no mutuality; it is only an offer and susceptible of revocation at any time. Beach v. M. E. Church, 96 Ill. 177; Pratt, Admrix. v. Trustees of the Baptist Society of Elgin, 93 Ill. 475. (6) Appellants violated the subscription contract. Martin v. Creech, 58 Mo. App. 391; Perkins v. Bakrow, 45 Mo. App. 248; James v. Clough, 25 Mo. App. 147; Sult v. School Tp., 36 N. E. Rep. 291; Elec. Co. v. Miller, 30 N. E. Rep. 23; M. E. Church v. Sweney, 52 N. E. Rep. 546; Shuler v. Martin, 48 Kan. 282; 24 Am. and Eng. Ency. of Law, pp. 328, 329, 330; Brimhall v. Van Campen, 82 Am. Dec. 118; Bucklin v. Johnson, 19 Ind. App. 406; Tavern Co. v. Burkhart, 87 Mich. 282; Sickles v. Anderson, 63 Mich. 421; Mfg. Co. v. Lewis, 47 N. W. Rep. 652.

SMITH, P. J.—This is an action which was brought upon the following subscription paper:

"In consideration of value received and for the purposes hereinafter expressed, within thirty days after demand, we who subscribed our names hereto promise to pay to William McClanahan, Warren McCullough, Theo. S. Poole, James A. Niblo, Sr., J. H. B. Smith and J. C. McCoy as trustees, the respective and several sums set opposite our names as subscribers hereto, to be used by the said trustees in the purchase of lands, at and near the Quincy, Omaha & Kansas City Railway depot at Milan, Mo., sufficient for division purposes on the line of said railway or of its successors or

grantees; and for the further purpose of erecting on the lands so purchased a roundhouse capable of holding at least twelve (12) engines, together with a turntable, coal sheds, a building suitable for the offices necessary for the operation of trains as division headquarters, and as well also, for the further purpose of grading the lands to be used for trackage and yardage purposes.

"The conveyance of said property to be made by the said trustees, or by their successors, to the said Quincy, Omaha and Kansas City Railway Company, or to its grantees or assigns upon condition:

"That said company, its grantees and assigns, perpetually maintain the same as division headquarters, in the operation and management of its said railway, and upon failure in that regard the property so conveyed, together with all erections and improvements thereon to revert to the said trustees or to their successors in trust, for the use and benefit of said subscribers in proportion to the amount paid by each.

"It is further expressly provided that in no event are the subscribers hereto, to be held liable to pay anything whatever in the event no division of the said Quincy, Omaha and Kansas City Railway or its grantees and assigns be established at Milan, by the persons now operating the same, or by its grantee company.

"Milan, Missouri, March 1, 1897.

| Name. | Amount. |
| --- | --- |
| Isaac Guinn | $500 |
| A. Payne, Sr. | 500 |
| C. Payne | 500 |
| Payne & Campbell | 500 |
| John P. Butler | 500 |
| Poole Bros | 150 |
| Isaac Guinn | 250 |
| J. H. Halliburton | 200." |

One of the defenses pleaded by the answer of the defendants was that they subscribed the said subscription contract upon the express agreement with the plaintiffs that their subscriptions should not be binding and should not be delivered nor accepted until there was ten subscribers thereto, including themselves, for the sum of five hundred dollars each; that while said subscription contract was in the hands of one Winters, who was then soliciting subscribers and subscriptions thereto, and before the same had been delivered to plaintiffs, and before they had expended any money or incurred any liability in promoting the subscription enterprise, defendants notified and informed the said Winters and the plaintiffs that they withdrew their said subscription and would not pay the same. At the trial, these allegations of the defendants' answer were fully sustained by the evidence.

The cause was tried by the court without the aid of a jury. Its finding and judgment was for defendants. It has been repeatedly ruled by the appellate courts of this state that when a case is submitted to the court without the aid of a jury its finding is conclusive if there is any substantial evidence on which to base it. Caruthers v. Williams, 58 Mo. App. 100; Arnold v. Ins. Co., 55 Mo. App. 149; Smith v. Zimmerman, 51 Mo. App. 519; Swayze v. Bride, 34 Mo. App. 414; Gaines v. Fender, 82 Mo. 497; Hamilton v. Boggess, 63 Mo. 233.

But the plaintiffs here insist that the defense pleaded by the answer, and to which we have just referred, was invalid—no defense whatever. The subscription made by the defendants was a gratuitous one. In Beach on Contracts, section 206, it is said: "A gratuitous subscription is a mere offer which may be revoked at any time before it is accepted by the promisee. And on acceptance can only be shown by

some act on the part of the promisee whereby some legal liability is incurred or money is expended on the faith of the promise."

In 1 Parsons on Contracts, section 450, it is stated: "The party making the promise is bound to nothing until the promisee within a reasonable time engages to do, or else does or begins to do, the thing which is the condition of the first promise. Until such engagement or such doing, the promisor may withdraw his promise, because there is no mutuality, and therefore no consideration for it. But after an engagement on the part of the promisee which is sufficient to bind him, then the promisor is bound·also, because there is now a promise for a promise, with entire mutuality of obligation."

Where notes are given by way of voluntary subscription to raise a fund or promote an object, they are open to the defense of want of consideration unless money has been expended, or liabilities incurred which, by legal necessity, must cause loss or injury to the person so expending money or incurring liability if the notes are not paid. 1 Parsons on B. & N., p. 202; 1 Parsons on Contr., 377 et seq. The promise stands as a mere offer, and may by necessary consequence be revoked at any time before it is acted upon. It is the expending money, etc., or the incurring of legal liability on the faith of the promise which gives the right of action. The subscription is a mere offer until acted upon, because until then there is no mutuality. Being but an offer, it is susceptible of revocation at any time until it is acted upon. This seems to be the clear result of the adjudicated cases. Pratt v. Trustees, 93 Ill. 475; McCune v. Wilson, 43 Ill. 356; Richilieu v. Encampment, 140 Ill. 248; Beach v. Church, 96 Ill. 177; Williams v. Rogan, 59 Texas 438, and cases there cited; La Fayette Co. v. Magoon, 73 Wis. 627;

Grand Lodge v. Farnham, 70 Cal. 158; Church v. Kendall, 121 Mass. 528; Lapsley v. Howard, 119 Mo. 489; Egger v. Nesbitt, 122 Mo. 668; Workman v. Campbell, 46 Mo. 305; Corrigan v. Detsch, 61 Mo. 290.

Similar promises of others to plaintiffs may be a consideration for agreements, between such others and plaintiffs, but as they confer no benefit upon defendants and impose no charge or obligation upon plaintiffs they constitute no legal consideration for defendants' promise. Church v. Kendall, *ante*; Orphans' Home v. Sharp, 6 Mo. App. 150. The rule that denies to a subscriber the right to revoke his subscription when others have subscribed on the faith of his subscription has no application in a case like this where the subscription contract does not provide for raising any specific amount. Kelly v. Oliver, 113 N. C. 442.

When the defendants recalled their promise to pay the five hundred dollars, the subscription paper evidencing it was still in the hands of Winters, a solicitor who had been appointed at a citizens' meeting, and perhaps by the trustees, to procure subscriptions for the object named in the subscription paper. It had not been reported to, nor accepted by either a citizens' meeting or by the plaintiffs in their capacity of trustees. At that time it remained to be ascertained whether the amount that would probably be necessary to accomplish the object could be raised, so that it is quite evident the trustees as prudent business men, as they no doubt were, had not up to that time incurred any liability on that account. Before doing so they would of course wait until the subscriptions were turned over to them. It may be that they in advance of the return of the subscriptions took options on such real estate as they thought desirable to acquire in order to carry out the subscription object in case the necessary amount should later on be subscribed for that purpose, but it

can not be said that they thereby incurred any liability on the faith of such subscriptions. No reason is seen why the defendants, at the time they notified Winters of the recall of their subscriptions, did not have the legal right to do so. There was then no irrevocable binding promise to pay the amount subscribed. The subscription was yet no more than a voluntary offer—something like the offer of a reward— which had not yet ripened into a contract. It was yet subject to recall, or modification. Defendants could then, no doubt, have increased or diminished it, or have hampered its payment with named conditions had they seen fit to do so. It was no more binding on them then than it was the moment they signed it. Their relation as promisors and that of the trustees as promisees were exactly the same as they were when the subscription paper was signed, and consequently they had the right to recall it.

It is objected by plaintiffs that the court erred in rejecting an offer of evidence made by them to show a ratification of the subscription, but on turning to the pleadings it is there seen that to the defense pleaded by answer, the plaintiffs in reply did not plead either a ratification nor estoppel; and therefore the court did not err in rejecting their said offer. The rule is well settled that a party can not have the benefit of either a ratification or an estoppel unless it has been pleaded by him. Webb v. Allington, 27 Mo. App. 559; Ferneau v. Whitford, 39 Mo. App. 311.

It is further contended that the notice of withdrawal which the defendants gave to Winters was ineffectual.

In this we do not concur for the reason that it is conceded that Winters was the agent of both the trustees and those engaged in promoting the object named in the subscription papers. Any notice to Winters in respect to the subscriptions which he was soliciting or which had been

obtained but had not been accepted was notice to his principals. It was his duty when returning the subscriptions to inform his principals of the fact that the defendants had revoked their subscription. It must be conclusively presumed that he performed this duty so far as defendants are concerned. The evidence tends to show that the trustees were otherwise sufficiently advised of the defendants' withdrawal before they accepted the subscription papers or incurred any liability on the faith thereof.

The defense already referred to was fatal to the plaintiffs' claim and whether or not the other defense pleaded in the defendants' answer was valid or invalid, or whether the theories embodied in plaintiffs' refused instructions were or were not correct expressions of the law it is unnecessary for us to inquire, since the judgment of the court was for the right party and was the only judgment that it could have given. Accordingly, it will be affirmed. All concur.

ELLISON, J. (*concurring*):—There were several pleas of defense set up by defendants. Among them was that of failure on the part of the railway company to establish and maintain a division and division headquarters at Milan. While the trial court did not make special findings yet evidently its action on the declarations of law shows that it found the fact to be that the subscription contract in this respect had not been complied with by the company. An examination of the record shows that there was evidence in the cause sufficient upon which to base such finding. It is true that two witnesses for plaintiffs state that such division was established. But their whole testimony shows that this was merely their opinion. Mere words of affirmation or denial used by a witness in giving testimony will not be allowed to control the evident meaning of his whole testimony,

or the body of the evidence in the cause on that subject. State v. Logan, 84 Mo. App. 584.

But the plaintiffs take the position that the condition to the contract of subscription is that the *conveyance* of the property given to the company should be made upon condition that it perpetually maintain division headquarters at Milan. That this condition was complied with when such conveyance was made containing such condition regardless of the fact that the company may have afterwards failed to comply with the condition, and that defendants are not excused from payment of their subscription to plaintiffs on account of such failure of the railway company. And in this connection plaintiffs contend that the only condition in the contract, the failure to perform which would excuse defendants, is that one requiring the railway company to establish a division of said railroad at Milan; that if the company merely established a division at that place it complied with the condition though it was not used or maintained as a division.

We are not impressed with this position. The whole contract of subscription as well as its object and purpose, shows that the consideration for the subscription was that the railway company would establish and maintain division headquarters with the buildings and equipments necessary for such purpose. If the company failed to do this it constitutes a valid defense to the payment of subscriptions. Brimhall v. Van Campen, 8 Minn. 13; Sickles v. Anderson, 63 Mich. 421; Ft. Wayne E. L. Co. v. Miller, 131 Ind. 499. The last clause of the contract should be construed with the whole paper. Its meaning then becomes plain. Plaintiffs should not be permitted to select this one clause, separate it from the other parts and demand that it control the whole. Davis & Rankin v. Hendrix, 59 Mo. App. 444. The case of

Shaffner v. Jeffries, 18 Mo. 512, does not conflict with this statement of the law. If, in that case, there had been no telegraph line strung, or no "office opened in Union," and the subscriber yet had been held liable for unpaid subscription, it would have been applicable to the facts in this case.

In obtaining ground for the use of the railway company upon which to establish division headquarters, the plaintiffs, as trustees, procured conveyances from Smick & Bailey to themselves which they afterwards conveyed to the railway company, and from John P. Butler to the railway company. The answer charges that these deeds to the railway company were not such as were contemplated by the contract of subscription and that there was collusion between the railway company, these plaintiffs and Butler to keep these deeds off of the record for several months with the design and purpose of keeping their contents from the knowledge of the defendants and other subscribers until they should pay their subscriptions. There is no evidence in the record to sustain this charge. It is true that the two deeds to the railway company were not recorded by it for several months after their date and delivery to the company. But so far as the record shows that was a mere happening. Unless connected with some tangible evidence it is a circumstance of no consequence. There is not a particle of evidence that there was any design or collusion practiced by either of the parties charged. Indeed, we fail to find any evidence to show that these trustees or Butler even knew that the deeds had not been promptly recorded.

The failure to sustain the answer in this respect does not, however, in the least affect the force of the defense, already discussed, that the railway company has not, under the finding of the trial court, complied with the contract which formed the basis of defendant's subscription. The judgment should be affirmed as ordered.