CLARK, C. J., concurring arguendo.
(3) "KNOXVILLE, TENN., Oct. 14, 1905.
"JAY WOODS, No. 38 Depot Street, Asheville, N.C.
"Come at once. Grant Woods is dead. If not, let know.
LEONA WOODS."
The plaintiff testified in his own behalf as follows: "My name is Jay Woods. I live in Asheville and own my own home, in the rear of No. 83 Depot Street, where I have lived for about ten years. I am a porter, in the employ of the Southern Railway Company, and on the 14th day of October, 1905, and before and after that time, was running on a passenger train, between Asheville, N.C. and Columbia, S.C. My run brought me into Asheville between 1 and 2 o'clock on one day and took me out about 4 o'clock on the following day. I was in Asheville *Page 3 
on Saturday, the day the telegram was received at the Asheville office, and until about 4 o'clock on the following day, when I went out on my run. Monday, on my way back to Asheville, I learned at Spartanburg, about 11 A.M., that my brother, Grant Woods, was dead, and that his body had passed through Asheville that morning and would be buried at Cleveland, N.C. that day. My brother lived at Knoxville and was engaged in railroading. Our mother's home is near Cleveland, and Grant's body was taken there from Knoxville for burial. My train was late that day, Monday, getting into Asheville so late that, as we came into the yard, No. 12, the train for Cleveland, was pulling out. The next train for Cleveland was Tuesday morning, about 7 o'clock. I took this train. On arriving at Asheville Monday afternoon, and finding I could not go to Cleveland until next morning, I wired my mother's home, asking that they hold the body until I arrived. I reached home some time after noon Tuesday, and walked to my mother's home, about five miles in the country, arriving about 4 o'clock. Grant's funeral was held about an hour after my arrival, and I was present at his funeral. When I reached home the condition of Grant's body was such that I could hardly tell who he was. If (4) the telegram had been delivered to me Saturday night, when it was received at the Asheville office, I could and would have caught the train for Knoxville, due to leave that night about 1:10 A.M. and to arrive at Knoxville about daylight Sunday morning. If I had missed this train there were two trains on the following day — one about 7 A.M. and one about 2:30 P.M. — from Asheville for Knoxville. My house is about 75 or 100 feet in the rear of Depot Street. There was one house between my house and Depot Street. There was no house fronting on Depot Street numbered 83, and a person walking along the street could not have seen such a number. I did not live at 38 Depot Street, and a message addressed to that number and delivered there would not have reached me, as there was a white family living there."
Will Robertson, witness for the plaintiff, testified that on 15 October, 1905, he resided in the rear of No. 85 Depot Street, and that the above message was delivered to him on Sunday, about 6 o'clock P.M., and by him turned over to Jay Woods' wife later in the evening.
The plaintiff also offered in evidence the then current city directory of Asheville. It was admitted that this was the city directory, but defendant did not admit that it was correct. The directory showed the name of Jay Wood, porter, and that he lived in the rear of house No. 83 Depot Street.
At the close of plaintiff's evidence the court, on motion of defendant's counsel, ordered a nonsuit, under the provisions of the statute. Plaintiff excepted and appealed. *Page 4 
The case should have been submitted to the jury, and the court erred in deciding as matter of law that there was no evidence of actionable negligence. The defendant introduced no evidence, and it therefore does not appear that it made any effort, not even the (5) slightest, to deliver the message, notwithstanding the mistake in the street address. This Court, in Hendricks v. Telegraph Co.,126 N.C. 304, held it as well settled by the authorities that when a telegraph company receives a message for delivery to the addressee and fails to deliver it, it becomes prima facie liable, and the burden rests upon it of proving such facts as will excuse its failure. That case followed the principle as stated in Sherrill v. Telegraph Co., 116 N.C. 655, and it has been since approved in numerous cases. Lawdie v.Telegraph Co., 126 N.C. 431; Rosser v. Telegraph Co., 130 N.C. 251, and Cogdell v. Telegraph Co., 135 N.C. 431, where the cases upon this question are collected. The Court said, in Rosser v. Telegraph Co.,supra, that "All the facts relating to the transmission of the message were within the possession of the defendant, and it did not choose to disclose them to the court and jury. From the very nature of telegraphy, neither the sender nor sendee could personally know what became of the message or why it was not received at its destination, or, if received, why not delivered."
In Hinson v. Telegraph Co., 132 N.C. 460, the message was addressed to M. L. Hinson, in care of the Olympia Mills, Columbia, S.C., without giving any street number or address. The messenger was informed that Hinson was not at the mills. The agent of the mills refused to receive it for him, and this Court said that the case stood as if the message had not been sent in care of the mills, and with no better information of the whereabouts of Hinson than if it had simply been addressed to him at the city of Columbia, S.C. It was nevertheless held to be the duty of the defendant to make every reasonable effort and to exercise due diligence to find the sendee and to deliver the message, and this is the doctrine as stated in all the decisions of this Court where such a point has been presented. Cogdell v. Telegraph Co., supra; Hendricks v. Telegraph Co., supra. In Hinson's
(6) case the defendant, as it appeared, had used due diligence to find the addressee. But the case of Lyne v. Telegraph Co., 123 N.C. 129, would seem to be directly in point and to charge the defendant with negligence, at least prima facie, as the facts now appear in this case. It was there held to be the duty of the defendant to inquire at the post-office for the residence of the sendee, no street address having been given. The *Page 5 
rule is that the defendant must make reasonable inquiry and exercise that degree of care which a prudent person would use under the circumstances in the effort to deliver the message. In this case it seems that the defendant made no attempt to deliver the message. The misdirection did not excuse this omission on its part. If the messenger boy had inquired at No. 38 Depot Street he would have been told, it is true, that Jay Woods did not live there, but he might have acquired information which would have led to the discovery of his residence, as he lived close by. The entry in the city directory was also some evidence to be submitted to the jury upon the issue of negligence. The slight variation from the true name — that is, Jay Wood for Jay Woods — was not sufficient to deprive it of its character as evidence, and was hardly sufficient to mislead a person of ordinary prudence. Cogdell v. Telegraph Co., supra. No inquiry was made at the post-office. Lyne v. Telegraph Co., supra. Indeed, the defendant, so far as the case shows, did not even send out a messenger boy with the telegram for the purpose of finding the sendee. If due search had been made for him and he could not be found, it was still required to wire back for a better address, which it did not do, and this was evidence of negligence.Hendricks v. Telegraph Co., 126 N.C. 304; Cogdell v. Telegraph Co.,135 N.C. 431. In any view of the case there was evidence of negligence proper to be considered and passed upon by the jury, and the judgment of nonsuit was therefore erroneous.
The fact that the plaintiff did see his brother's body before the (7) burial is no defense to this action. The defendant has failed to perform a plain duty which it owed to him, and this shows actionable negligence. Hendricks v. Telegraph Co., supra; Cogdell v. TelegraphCo., supra; Hocutt v. Telegraph Co., 147 N.C. 186. Nor will the objection hold that the message was sent from Knoxville, Tenn. There is no proof of the law of that State in respect to the recovery of damages for mental anguish in a case like this one. We have held that the breach of the duty of the defendant in delivering a message is a breach of the law, and for this breach an action lies, founded on the common law, which action wants not the aid of a contract to support it.Green v. Telegraph Co, 136 N.C. at p. 492; Cashion v. Telegraph Co.,124 N.C. 459; Cogdell v. Telegraph Co., 135 N.C. 431. "In the absence of proof to the contrary, the courts of our State will presume the common law to prevail in a sister State." 6 Am. and Eng. Enc. of Law (2d Ed.), 282; Griffin v. Carter, 40 N.C. 413; Brown v. Pratt, 56 N.C. 202;Gooch v. Faucett, 122 N.C. 270; Terry v. Robbins, 128 N.C. 140;Bank v. Carr, 130 N.C. 479. "The statute and common law of our sister States are facts to be proven, as any other facts in a cause, by the party who seeks to take advantage of any difference that may exist *Page 6 
between such laws and our own." Bremhill v. Van Campen, 8. Minn., 13; Peterson v. Bank, 32 N.Y. 21. The rule upon this subject is well expressed in Carpenter v. Ry., 72 Me. 388: "This brings us to the inquiry whether the ruling at the trial can be sustained upon the ground that there was no evidence of what the law of Canada was. We think not. Undoubtedly the case was to be tried in accordance with the law of this State, in the absence of proof of any other law. `It is a well-settled rule,' says the Court of Appeals of New York, `founded on reason and authority, that the lex fori, or in other words, the laws of the country to whose courts a party appeals for redress, furnishes in all cases prima facie the rule of decision; and if either party wants the benefit of (8) a different rule or law (as, for instance, the lex domicilii, lex loci contractus, or lex loci rei sitae), he must aver and prove it. The courts of a country are presumed to be acquainted with their own laws, but those of other countries are to be averred and proven, like other facts of which courts do not take judicial notice.'" Monroe v. Douglas,5 N.Y. 447. Wigmore, in his work on Evidence, par. 2536, says that in reality there is no presumption of what the law is in another State, but the true process is merely that of refusing to recognize a presumption that a foreign State has a law different from that of the lex fori.
The plaintiff cannot recover any damages because he saw his brother's body after decomposition had advanced so far that his features could "hardly" be recognized. We have held at this term that this is not a proper element of damages. Kyles v. R. R., 147 N.C. 394.
New Trial.