MANNING, J., concurs in the result; BROWN, J., dissenting.
The facts are stated in the opinion of the Court.
This action was brought by the plaintiff to recover damages of the defendant for the negligent failure to deliver a telegram, in words and figures as follows:
DURHAM, N.C. 29 June, 1908.
MRS. RINEY ROGERS, No. 419 South Street, Wilson, N.C.
Come at once. Ida and I are sick with malarial fever.
GUS SHAW.
The sendee was the sister of the plaintiff, the sender of the message. It appears that there are two houses in Wilson numbered 419 — one at the corner of South and Lodge streets, and the other at the end of South Street — the two houses being "a block apart." A colored woman lived in the house at the corner, and the addressee lower down South Street. She and her husband and their children had (640) lived at their home on South Street about two years before the telegram was received by the operator at Wilson for delivery. They had four children, aged, respectively, fifteen, thirteen, eleven, and seven years. Mail had been delivered at the home of the addressee for her husband, who had lived in Wilson for sixteen years prior to 29 June, 1908. The delivery messenger of the defendant, who was at the time seventeen years of age, went to the house at the corner to deliver the message, and found that it was occupied by a colored woman, which fact was reported to the defendant's manager at Wilson, and he testified that it made him think that the corner house was not the one described in the message. He thereupon wired back to Durham a service message, inquiring for a better address. This message was carried by the delivery message at Durham to the home of the plaintiff, by whom the messenger was told that the address was correct and that Mrs. Riney Rogers did live at No. 419 South Street, in Wilson, and that she had received mail from the plaintiff addressed to that number — that is, 419 South Street, Wilson, N.C. The manager at Wilson testified that he did not receive any reply to the service message which he had sent to Durham, and that after he concluded the next morning the address was not correct, he did not notify the Durham office of the fact, as he expected to hear from the manager at that place. Inquiry was made at the post office in Wilson by the messenger boy as to the residence of Mrs. Rogers, and he was told that it was No. 419 South Street. A postal card was mailed to her at that address, but was delivered to Annie Moring, the colored woman who lived in the corner house. This and much more testimony was introduced to show the negligence of the defendant in failing to deliver the message. The plaintiff was asked by his counsel this question: "What effect, if any, did the failure of *Page 616 
your sister to come, in answer to your telegram, have upon you?" To which he answered: "It just liked to kill me. I didn't know what was the matter. I couldn't hardly tell what effect it had on me. It affected me pretty bad. It caused me mental distress, because I didn't know what was the matter with her." The defendant objected to the question and answer. The objection was overruled, and defendant excepted. It fairly appears, from the evidence, that the plaintiff was working in a hosiery mill and was not in good pecuniary circumstances, and that he wanted his sister to nurse him and his wife. Mrs. Rogers testified that had she received the message she would have gone to Durham to be with her brother. The defendant moved to nonsuit the plaintiff. This (641) motion was overruled, and the defendant excepted.
The court charged the jury to answer the first and second issues as they might find the facts to be, and correctly charged them, we think, as to what would constitute negligence. Indeed, the only inference that could be drawn from the evidence, if believed by the jury, showed a case of gross negligence on the part of the defendant — that the negligence was calculated to cause the plaintiff mental anguish, and, in fact, did produce that result. The charge of Judge Long, who presided at the trial, as to all the controverted questions in the case, was fair, full and explicit and in strict accordance with the principles of law so often decided by this Court, and which were applicable to the case. It gave the defendant the benefit of every defense it raised, under a correct statement of the law, and it has no cause whatever for complaint.
The question propounded to the plaintiff, while testifying in his own behalf, as to the effect the failure of his sister to come had upon him, with reference to his mental anguish, was clearly competent. Thompson v.Telegraph Co., 107 N.C. 451; Harrison v. Telegraph Co., 143 N.C. 150
(opinion by Justice Brown); Sherrill v. Telegraph Co., 117 N.C. 362 and 363. We could cite many other cases to the same effect, but why do so, when the very "reason of the thing" and the nature of the case so completely sustain our ruling? Bowers v. Telegraph Co., 135 N.C. 504, which the defendant's counsel cite in their brief, is not at all in point. The facts of the two cases are widely different. If any irrelevant matter crept into the answer, the defendant should have specifically excepted to it, as a part of the answer was certainly competent. But we do not think the defendant was injured by any part of the answer complained of, even if it was irrelevant. In this case the plaintiff had the right to presume that, if the defendant had performed its duty, his sister was informed of his condition and that of his wife, both being prostrated by sickness; and what he evidently *Page 617 
meant was that he suffered mental anguish, because, under the circumstances, she did not come to him, he being unable to account for her failure to come. This objection is so plainly untenable that it cannot receive any favorable consideration from us.
The motion to nonsuit was properly overruled. The plaintiff established every fact, if the witnesses were credible, which entitled him to recover damages — that is, negligence and mental anguish, and damages proximately caused thereby. As to negligence, the motion to nonsuit and the charge are amply sustained by Sherrill v. Telegraph (642)Co., 116 N.C. 655 and 658; Rosser v. Telegraph Co., 130 N.C. 251;Young v. Telegraph Co., 107 N.C. 370; Lyne v. Telegraph Co.,123 N.C. 129; Hinson v. Telegraph Co., 132 N.C. 460; Woods v.Telegraph Co., 148 N.C. 6; Codgell v. Telegraph Co., 135 N.C. 431;Hendricks v. Telegraph Co., 126 N.C. 304. As to mental anguish, there was direct testimony that it existed and was caused by the defendant's unaccountable negligence. Besides, it was the natural result of such negligence, and common humanity required that the defendant should have inferred it from the very face of the message and the facts otherwise brought to its attention. Why the defendant will conduct its business with so little regard to the rights of its patrons, we are unable to conceive. In Green v. Telegraph Co., 136 N.C. 492, this Court said: "Aside from this, we think the circumstances in which she was placed may well have caused it. It is true she suffered no insult or physical injury, but the question is, what would be the natural effect upon the mind and nervous system of a child of her age?" The defendants cited Williams v.Telegraph Co., 136 N.C. 82, but the case sustains our ruling. It was there said: "In order to enable him to recover substantial damages, based upon his mental distress and suffering, it is necessary for him to show that the defendant could reasonably have foreseen from the face of the message that such damages would result from a breach of its contract or duty to transmit correctly, or that it had extraneous information which should have caused it to anticipate just such a consequence from a neglect of its duty toward the plaintiff." The language fits this case exactly. The defendant could easily have foreseen or anticipated what would be the result, both from the face of the message and the extraneous facts and circumstances, of which it had full knowledge.
The charge of the court upon the question of damages violated no principle of law, but was in exact accordance therewith in every particular. It confined the damages to compensation for mental anguish alone. This is the language of the Court: "The damages, as I have stated to you, if allowed at all, are allowed on account of his mental suffering that he endured by reason of the fact that his sister was *Page 618 
prevented by the defendant's negligence from coming and being with him when he was sick." The other exceptions are without merit and do not require any special comment. The case was well tried, and the record of it shows no error.
The defendant does not contend, as counsel stated, that there can be no recovery for mental anguish caused by the negligent failure (643) to deliver a message announcing sickness or death. If it does, hereafter, with seriousness, when this Court has so often decided against such contention, we can only repeat what we have said in Catesv. Telegraph Co., ante, 497: "The doctrine of `mental anguish,' as it is called, was recognized and firmly established in our jurisprudence long before I (the writer of this opinion) came to this bench (Young v.Telegraph Co., 107 N.C. 370; Thompson v. Telegraph Co., 107 N.C. 449), by a Court of exceptional ability and learning. It has been repeatedly upheld by other decisions, when the personnel of the Court had changed, and it cannot at this late day be successfully assailed as being against the principles of the common law. Having been thus deeply rooted in our jurisprudence, and having received the sanction and approval of our most eminent jurists many years ago, it should now be accepted as an acknowledged principle of law, and the cases in which it is involved should be tried and determined as other cases in which there has been no disagreement as to what is the law relating to the cause of action." And again, while speaking for myself and expressing my individual opinion, "I do not wish to be understood as not concurring with the able judges who took part in deciding the cases of Young v. Telegraph Co., supra, andThompson v. Telegraph Co., supra, for the principle, as established by those cases, receives my full assent. I believe that what we call `the doctrine of mental anguish' is based upon a sound principle of the common law, which is elastic enough to meet new conditions as they arise, and to adjust itself and its well-settled rules to the ever-changing circumstances of a progressive civilization and the onward march of reform in the administration of justice. It would be a reproach to the law if telegraph companies can wantonly neglect their duty and obligation to their patrons with impunity and without any responsibility for their wrong, committed sometimes without the slightest excuse and under exasperating circumstances. I speak now only for myself, and am not committing the Court, as a body, to my views."
The doctrine must therefore be considered as much a part of the law of this State as the rule in Shelly's case, and it is much more right and just, in principle, than is that rule, the reason for which has long since ceased to exist. But the doctrine is right and just in itself. The reasons advanced to overthrow it are utterly inadequate for that purpose. *Page 619 
Damages are allowed for mental anguish, by way of compensation, in other cases, and it never occurred to the courts that the alleged difficulty in assessing them was any good reason for denying them to a party who had been injured by the wrong of another. (644) It would be reducing the law to an absurdity should it be held that if a party recovers one dollar for an injury to his person or any other invasion of his rights, he may also recover damages for mental anguish, caused by the wrong; but if he does not sustain any loss, great or small, apart from that caused by mental anguish, resulting from the wrongful act of another, it is damnum absque injuria, however much he may have suffered. This would be refining to the last degree, and should not be accepted as a fair and equitable rule of the law. In some cases a person may suffer more — that is, in the sense of an injury to his rights — by mental anguish than if he had lost many dollars by the negligent act of the defendant in failing to deliver a telegram. When the question is seriously presented, we will express our views more at large upon the subject.
No error.
MANNING, J., concurs in result. BROWN, J., dissents.
Cited: Carswell v. Telegraph Co., 154 N.C. 118; Betts v. Telegraph Co.,167 N.C. 81; Peyton v. Shoe Co., ibid., 282.