## GRAY *v.* TELEGRAPH Co.

### (*Knoxville.* October 15, 1901.)

1. TELEGRAPH COMPANIES. *Measure of liability for negligent delay in delivery of message from another state.*

   One who sends a telegram from another state to be delivered in this state is entitled to recover of the telegraph company, for its breach of statutory duty to deliver promptly, damages for mental distress caused by the negligent delay in delivering the message, although the company would not have been liable for such damages under the statute of the other state, or in an action upon the contract. (*Post, pp. 40-50.*)

   Code construed: §§ 1837, 1838 (S.).

   Cases cited: Wadsworth *v.* Tel. Co., 86 Tenn., 695; Tel. Co. *v.* Mellon, 96 Tenn., 72; Hubble *v.* Land Co., 95 Tenn., 589.

2. INTERSTATE COMMERCE. *State statute regulating liability of telegraph companies is not interference with, when.*

   A state statute declaring and enforcing the prompt and correct delivery of messages by telegraph companies, and subjecting such companies to prosecution for misdemeanor and to action for damages for violation of that duty, is not objectionable, in its application to messages sent from another State for delivery in this State, as an unlawful interference with interstate commerce. Such statute is not an obstruction, but an aid, to interstate commerce. (*Post, pp. 50–52.*)

3. DECLARATION. *Not on contract, but for breach of statutory duty.*

   Although the declaration in this case recites the contract in stating the facts upon which recovery is sought, it is construed as a whole to be an action, not on the contract, but for breach of statutory duty. (*Post, pp. 52, 53.*)

---

FROM RHEA.

---

Appeal in error from the Circuit Court of Rhea County. M. D. SMALLMAN, J.

---

---

GIVENS & HENSLEY and BURKETT, MILLER & MANSFIELD for Gray.

FOSTER V. BROWN, B. G. McKENZIE for Tel. Co.

McALISTER, J. Kate N. Gray, a married woman, brings this suit by C. H. Gray, her husband, as next friend, against the defendant company, to recover damages for failing promptly to transmit and deliver a telegram sent by her from Taylors, Mississippi, to her husband, C. H. Gray, at Dayton, Tennessee, informing him of the serious illness of their daughter, and requesting him to come to Taylors.

The trial below resulted in a verdict and judgment in favor of the plaintiff for nominal damages. Plaintiff appealed, and has assigned errors. The facts are practically undisputed. It appears that in July, 1900, C. H. Gray was at Dayton, Tennessee, where for some months he had been engaged in business, and at that time his wife, Kate N. Gray, with her daughter, Louise, were in the State of Mississippi, where the family resided. It further appears that C. H. Gray still retained his residence in Mississippi. On July 15, 1900, Mrs. Gray addressed to her husband the following telegram, to wit: "Louise is sick. Come on first train. Stop at Taylors." This message was promptly transmitted to Dayton, but was held at the latter place from the afternoon

of July 15 until the morning of the 16th, when it was delivered to the sendee. The daughter died at 10 p. m. on July 15, and was buried, on advice of physicians, at 5 p. m., July 16. It is alleged that in consequence of the negligence of the company in delivering the message, the plaintiff's husband, C. H. Gray, was unable to be with plaintiff at the funeral, to comfort and minister to her.

On the morning of July 16, after receipt of his wife's message, C. H. Gray telegraphed as follows: "Unless Louise is dangerous, cannot come until first of month." Shortly after this message was sent, plaintiff received another telegram, sent at the request of his wife, stating: "Louise died at 10 p. m. yesterday. Come on first train to Taylors." C. H. Gray, the husband, then left Dayton on the afternoon of July 16, and reached Taylors on the morning of July 17, but the daughter had been buried at 5 p. m. on July 16. It appears that if the telegram from Mrs. Gray, which was received at the office of the company in Dayton at 5:50 p. m. on July 15, had been promptly delivered, the husband, C. H. Gray, could have taken a train which would leave a half hour later, and have reached Taylors prior to his daughter's interment. He testifies that he would have taken said train. It further appears that the husband, C. H. Gray, after the receipt of the last telegram announcing his daugh-

ter's death, took the first train that made connection for Taylors.

As already observed, this is the suit of the wife, and the gravamen of the action is the loss to her of the presence and consolation of her husband at the daughter's funeral.

Among other pleas filed by the defendant company was the following. to wit: "That the telegram, about the delivery of which complaint is made, was filed at one of its (the company's) offices in the State of Mississippi, and the contract for the transmission and delivery of said telegram was made and entered into by the parties to the contract in the State of Mississippi, and in reference to the laws of said State, and defendant avers that, according to the laws of Mississippi, under which the contract was made, the plaintiff has no right of action to recover the damages sued for." Plaintiff's counsel demurred to this plea, because immaterial and insufficient in law, but the demurrer was overruled. Plaintiff then filed the following replication to said plea, to wit: "She admits the delivery of the telegram to defendant at one of its offices in the State of Mississippi, and that the contract for the transmission and delivery of said telegram was made in the State of Mississippi, and, according to its laws, she would have no right of action to recover the damages sued for, but she denies that the contract for the transmission and delivery

Gray *v.* Telegraph Co.

of said telegram was entered into in reference to and to be governed by the laws of said State, further than the confines of the State of Tennessee, and in which latter State the default sued for is shown to have occurred." Defendant moved to strike out this replication, but the motion was overruled. At a subsequent term, plaintiff, reserving her exceptions, by leave of the Court, filed an additional replication to the fourth plea, viz.: "That her cause of action herein arises under the statutes and laws of Tennessee and not under the laws of Mississippi, and that in the making of the original contract for the transmission and delivery of said telegram, she did not waive or renounce any rights afforded her by the laws of Tennessee, and for this reason she should not be prejudiced by the laws of Mississippi." Issue was joined on this replication.

The Court charged the jury, among other things, as follows: "If the proof shows the message not delivered in a reasonable time, and that plaintiff's husband on that account failed to go to the plaintiff, and that he would have gone if the message had been promptly delivered, and that plaintiff was, in consequence thereof, deprived of his sympathy and consolation during the daughter's illness, or at the funeral, you should find for the plaintiff, and award her nominal damages—that is, a small sum of a few cents, so as to carry the costs against the defendant. But the contract,

undertaking or agreement, having been entered into in the State of Mississippi for the transmission and delivery of the message, which, as alleged in the plaintiff's declaration, was partly performed in that State, the liability of the defendant for failure to promptly deliver it, or for negligence for delay in its delivery to the sendee in Tennessee, is governed by the laws of Mississippi, and under the laws of that State no recovery can be had for mental anguish merely, and that being the only injury complained of in this suit, you should award no damages for mental anguish."

Counsel for plaintiff then submitted four supplemental instructions, which he asked to be given in charge to the jury, which requests were declined by the Court. The substance of said request was that if defendant company breached its statutory duty as defined by the laws of Tennessee, after the message was received at Dayton, Tennessee, by failing to promptly deliver it, that plaintiff could recover such damages as were the direct and proximate result of the company's breach of duty.

The errors assigned are: (1) The Court was in error in refusing to strike out the fourth plea filed by defendant. (2) It was error to charge the jury that plaintiff was only entitled to nominal damages. (3) Because the laws of Mississippi did not govern and control defendant's liability in this case under the facts. (4) Because

the statement of the Judge that the jury should
find "a small sum of a few cents," was an in-
fringement of the province of the jury and equiv-
alent to directing a verdict. (5) The Court
should have given in charge the four requests
submitted by plaintiff's counsel, to the effect that
the statutes of Tennessee, and not the laws of
Mississippi, determined the defendant's liability,
and that if default occurred in delivery of the
message after it reached Dayton, plaintiff should
recover such damages as were the legitimate, proxi-
mate, and direct result of defendant's default.

The argument in support of the instructions
given by the Circuit Judge to the jury proceeds
upon the assumption that the plaintiff's right of
action is *ex contractu,* and based upon an agree-
ment entered into and partly performed in the
State of Mississippi. The corollary is then pro-
pounded that such a contract must be governed
by the laws of Mississippi in existence at that
time, and since the laws of that State exonerate
the telegraph company from liability for mental
anguish, occasioned by the failure to promptly
transmit and deliver electrical messages, there can
be no recovery in this case. It is conceded in
argument that such is the law of Mississippi,
although the rule is otherwise in the State of
Tennessee. *Wadsworth* v. *Western Union Tele-
graph Co.,* 2 Pickle, 695.

Counsel cites numerous authorities to show that

in a case like this, the Mississippi law must control. In *Scudder* v. *Union Nat. Bank,* 91 U. S., 412, 413, it was said by the United States Supreme Court that "matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitations, depend upon the law of the place where the suit is brought." *Hubble* v. *Morristown,* 12 Pickle, 585.

In the case of *Liverpool & Great Western Steamship Co.* v. *Phoenix Ins. Co.,* 129 U. S., 397, Mr. Justice Gray, after a thorough review of the principal cases, English and American, on this subject, said that, according to the great preponderance, if not the uniform concurrence, of authority, the general rule is that the nature, the obligation, and the interpretation of a contract are to be governed by the law of the place where it is made, unless the parties at the time of making it have some other law in view. Accordingly, it was held in that case that a contract of affreightment executed in New York, between citizens or residents of that State, for the shipment of goods to Liverpool, is an American, and not an English contract, and so far as concerns

the obligation to carry the goods in safety, is to be governed by American law. 2 Parsons on Contracts (Eng. ed.), p. 578; *Southern Railway Co.* v. *Harrison,* 43 L. R. A., 387.

In *Hazel* v. *C., M. & St. P. Ry. Co.,* 82 Iowa, 477, it appeared that goods were shipped from Dakota to Iowa under a contract limiting liability, which contract was void under the laws of Iowa, but valid where made. The goods were lost in Iowa, but recovery was denied because of the limitation of liability contained in the contract of shipment. The Supreme Court said, viz.: It is a fundamental rule, and one of almost universal application, that in case of a conflict of laws concerning a private contract, the law of the place where the contract is made, and not where the action is brought, is to be considered in expounding and enforcing the contract, unless it be shown by the contract, or fairly inferable therefrom, that the parties intended that the law of another State or country should control their rights. In this case, said the Court, the parties contracted under the laws of Dakota, and the fact that such a contract is void in this State (Iowa) shows that it was intended that our laws should not have any application to their contract.

In *Reed* v. *Western Union Tel. Co.,* 135 Mo., 674; S. C., L. R. A., 492, it appeared that a suit was brought in Missouri by the addressee of a telegram sent from Iowa. The Court said, viz.:

"Both parties to this agreement for the trans-
mission of the message resided in Iowa. The
tariff was paid and the defendant entered upon
the performance of the contract in that State.
The statute and laws of Iowa were therefore
pertinent and admissible and determined the effect
of the contract." See *McDaniel* v. *Railroad,* 24
Iowa, 416.

In *Hubble* v. *Morristown Land Co.,* 11 Pickle,
589, we held that "the validity of the contract,
the obligation of the parties, its character and
extent, are to be settled by the law of the place
where the contract was made, or to be performed.
. . . If the contract is made in one place,
and it is agreed to be performed in another
place, the law of the place of performance, in-
stead of the *lex loci contractus,* will govern the
contract." In that case it was held that a note
secured by mortgage on Tennessee land for a
loan negotiated in Connecticut, executed in North
Carolina, but delivered and made payable in New
Jersey, was, in the absence of any different un-
derstanding between the parties, governed by the
laws of New Jersey in respect to usury.

In *Coghlan* v. *The South Carolina Railroad,*
142 U. S., 101, it was held that contracts made
in one place, to be executed in another, are, as
a general rule, to be governed by the law of the
place of performance. It was accordingly held
that bonds of a railroad company in South Caro-

lina, which are redeemable, and are to be wholly performed in England, bear interest ' after maturity, according to the law of England. See, also, *Hall* v. *Cordell,* 142 U. S., 115.

These authorities are very instructive upon the proposition submitted by counsel, and probably controlling in this case, if the remedy of plaintiff was alone upon the contract. But we have in this State a statute which has been construed by this Court to provide an additional remedy. It declares that "all other messages, including those received from other telegraph companies, shall be transmitted in the order of their delivery, correctly and without unreasonable delay, and shall be kept strictly confidential." Shannon's Code, § 1837. "Any officer or agent of a telegraph company who willfully violates either of the provisions of the preceding section is guilty of a misdemeanor, and the telegraph or telephone company is liable in damages to the party injured." Shannon's Code, § 1838.

Construing this statute in *Telegraph Company* v. *Mellon,* 12 Pickle, 72, we held that under our statute, allowing a right of action to the party aggrieved, it was not necessary that any contractual relation should exist, but the company is liable for a breach of its statutory duty independent of any contract. The breach of the statute, in failing to deliver the message, entitled the party aggrieved to at least nominal damages,

24 P—4

to which may be added compensatory or exemplary damages, in the discretion of the jury. In that case we quoted with approval Mr. Thompson on the Law of Electricity, Sec. 427, in which it it said, viz.: "The true view which seems to sustain the right of action in the receiver of the message, or in the person addressed, when it is not delivered, is one which elevates the question above the plane of mere privity of contract, and places it where it belongs, upon the public duty which the telegraph company owes to any person beneficially interested in the message, whether the sendee, or his principal, where he is agent, or the receiver, or his principal, where he is agent." We are of opinion, therefore, that plaintiff is an aggrieved party within the meaning of the act, and as such is entitled to maintain an action against the defendant company for the breach of a public duty. It is wholly immaterial that this message was sent from another State, and that plaintiff is seeking to recover for the failure to deliver such a message. In *Western Union Telegraph Co.* v. *James,* 162 U. S., 651, it appeared that the State of Georgia had passed a statute prescribing a penalty of $100.00 against telegraph companies failing to transmit and deliver dispatches with due diligence. A cotton merchant in Georgia brought suit against the Western Union Telegraph Company to recover the statutory penalty for failing to deliver with due diligence a

message sent to his .address by a cotton merchant residing in the State of Alabama, which default resulted in damage to the plaintiff. Said the Court, viz.: "The only question, therefore, before the Court is whether the statute of the State of Georgia, providing for the recovery of such penalty, is a valid exercise of the power of the State in relation to messages by telegraph from points outside, and directed to some point within the State of Georgia." The Court held that such a statute is not an unconstitutional interference with interstate commerce, as applied to interstate messages, in the absence of any legislation by Congress on the subject. Said the Court: "The statute in question is of a nature that is in aid of the performance of a duty of the company that would exist in the absence of any such statute, and is in nowise obstructive of its duty as a telegraph company. It imposes a penalty for the enforcement of this general duty of the company. . . . Can it be said that the imposition of a penalty for the violation of a duty which the company owed by the general law of the land, is a regulation of or an obstruction of interstate commerce within the meaning of that clause of the Federal Constitution. We think not. . . . . We see no reason to fear any weakening of the protection of the constitutional provision as to commerce among the several States by holding that in . regard to such a message as

the one in question, although it comes from a place without the State, it is yet under the jurisdiction of the State where it is to be delivered (after its arrival therein at the place of delivery), at least so far as legislation of the State tends to enforce the performance of the duty owed by the company under the general law."

It will be observed that the Tennessee statute provides no penalty for its infraction, but the violation thereof is declared a misdemeanor, and a right of action is expressly given the aggrieved party for all damages sustained. Plaintiff, as the party aggrieved, is entitled to sue in this State for breach of the statute.

It is insisted, however, that whatever action plaintiff might have brought by virtue of the code provision, she has not started such suit, but is suing upon the contract made with the company in Mississippi. In *Western Union Telegraph Company* v. *Mellon,* 12 Pickle, we held that such an injury might be redressed upon a statement of the facts of the case. If the statute prescribed a specific penalty for its violation, and the suit was brought to recover that penalty, it would be necessary to declare on the statute.

The declaration herein, in setting out the facts, recites the contract, but the statement of the cause of action is not distinctively · *ex contractu,* and is sufficient for relief under the statute.

It is insisted, however, that the mental suffering claimed to have been sustained by the wife on account of the absence of her husband from the funeral, was not the proximate consequence of the failure to deliver the telegram, since the telegram sent by the wife only conveyed intelligence of the daughter's illness. Again, it is insisted that the proof shows that the husband would not have departed for Taylors had he received the message on Sunday, since the telegram to his wife on the following day advised his wife that unless his daughter was dangerously sick, he could not go until the first of the month.

We do not pass upon these questions upon this record, but for the errors in the charge of the Court on the subject of the contract, and his refusal to charge, as requested, the judgment is reversed and the cause remanded.