## BRYAN v. WESTERN UNION TELEGRAPH COMPANY.

### (Filed December 8, 1903.)

1. TELEGRAPHS—*Delivery—Free Delivery Limits—Negligence.*

   Where the sendee of a telegram lives outside the free delivery limits it is the duty of the telegraph company to notify the sender and demand payment or guaranty of payment of fees for delivery beyond the limits.

2. TELEGRAPHS—*Notice of Claim—Summons—Damages.*

   A summons served on a telegraph company within the time stipulated in the telegraph blanks for making claim for damages is equivalent to the presentation of the claim within that time.

3. JURISDICTION—*Contracts—Telegraphs—Damages.*

   The liability for non-delivery of a telegram in another state under a contract made in this state is determined by the law of the latter state.

4. JURISDICTION—*Contracts—Corporations—Foreign Corporations— The Code, sec. 194, subsec. 2.*

   The Code, sec. 194, subsec. 2, authorizes an action against a foreign corporation by a non-resident plaintiff where the cause of action arises in this state.

5. TELEGRAPHS—*Mental Anguish—Damages—Negligence.*

> Mental anguish, though unattended with physical injury, is an element of damage in actions against telegraph companies for the non-delivery of messages.

A PETITION TO REHEAR this case, reported in 131 N. C., 828, by *per curiam* judgment.

*L. C. Caldwell,* for the petitioner.
*Jones & Tillett* and *F. H. Busbee & Son,* in opposition.

CLARK, C. J. On 9th November, 1900, the following telegram was sent from Mooresville, N. C., addressed to the plaintiff at Wedgefield, S. C., where she resided, in three miles of the defendant's office: "Aunt Anna dead. Funeral Sunday. Answer quick." This message was never delivered, but the contents came to her knowledge the evening of 10th November, too late to take any train in time for the funeral. The "Aunt Anna" named in the message was a sister to the plaintiff. The plaintiff testified that if she had received the message that day or any information as to the death of her sister, she could and would have gone to Mooresville. The son of the plaintiff testified that the operator at Wedgefield knew where the plaintiff was living the day the message was received, and this was not contradicted by any evidence. The sender did not know the plaintiff lived beyond the free delivery limits, and paid all that was asked for sending the message. No special delivery charges were demanded, and the operator at Wedgefield wired back to Mooresville merely: "Party not known." In deference to an intimation from the Court below, the plaintiff took a non-suit, and on appeal at last term that ruling was affirmed by a *per curiam* judgment. On this petition to rehear we are of opinion that the case should have been submitted to a jury. The defendant relies on four grounds:

1. That the sendee lived outside of the free delivery limits. In *Hendricks v. Tel. Co.*, 126 N. C., 310, 78 Am. St. Rep., 658, this Court says: "By its very terms this provision (on the back of telegraph blank) does not apply to the office from which the message is sent. It may be further noted that the company *does not say that the message will not be delivered* beyond such limits, but that a *special charge* will be made to cover the cost of such delivery, which would seem to clearly imply that it would be delivered. No fixed limit of distance or definite sum·is specified, and it is difficult to see how the sender can be presumed to know either, in the absence of information from the company." Here the defendant put in evidence its book of rules, which provides (rule 50) that beyond free delivery limits "only the actual cost of the delivery service will be collected; the manager will, however, see that such cost is as reasonable as possible." The company does not restrict its duty to deliver within the prescribed *free delivery* limits (else why the word "free"?). In this case the sendee lived outside of the free delivery limits, it is true, but that fact was not known to the sender, who paid in good faith all that was asked of him for delivery of this message; but it was known to the defendant's operator at Wedgefield, and this is not controverted by the evidence offered for the defendant. The defendant could have sent the message on to the plaintiff, collecting the charges of the special delivery of her, or, if not willing to risk that, it was negligence not to wire back to Mooresville demanding payment or guarantee of the cost of delivery beyond the free delivery limits. It was not only negligence, but bad faith, that knowing where the plaintiff lived (which was not controverted, though the defendant put on evidence, and must be taken as true on this motion to non-suit), the operator at Wedgefield merely wired back the untrue statement: "Party not known." He did not even ask for a better address, and this conduct would

seem to have been caused solely by an unwillingness to be troubled with hiring a special messenger to take the telegram out to the plaintiff's residence. Hence, instead of wiring that the plaintiff lived three miles out and the amount of cost of special delivery and asking its payment or guarantee, he simply wired back that the sendee "was unknown," thus leaving the plaintiff without any knowledge of what was necessary to secure delivery. If the plaintiff had been really unknown, or if a better address had been *bona fide* asked, and the sender had been unable (as it seems) to give further information, a different case would have been presented. If guarantee or payment of special delivery had been asked and refused, there was no compulsion on the defendant to deliver beyond the free delivery limits. But it undertook to deliver this telegram, and instead of demanding the cost of special delivery it misled the sender by falsely asserting, as ground for non-delivery, that the sendee was "not known." A case exactly in point is *Telegraph Co. v. Moore,* 54 Am. St. Rep. (Ind.), 515.

2. The second ground that no special delivery charges were guaranteed is disposed of by what has already been said. The facts of this case differ widely from those in *Hood v. Telegraph Co.,* which affirmed a non-suit by a *per curiam,* 130 N. C., 743, and which was reaffirmed in the same manner, 131 N. C., 828. In that case the sendee lived eight miles from the delivery office, the sender knew that fact and the company did not. The office at the receiving point could not have given the sender any information which he did not already have. It was his own negligence not to have paid the special delivery charges. Here the sender did not know that the plaintiff lived beyond the free delivery limits. The defendant, through its agent at Wedgefield, did, but it did not notify the sender, nor ask pay for special delivery.

It made a false statement that the sendee was unknown and the sender had no way to secure delivery.

3. The third ground that the claim for damages was not presented in sixty days is answered by the fact that the summons was issued and served within sixty days. *Sherrill v. Tel. Co.,* 109 N. C., 527, at page 532, where it is held "the general rule that the commencement of an action is equivalent to a demand applies to cases of this kind. Thompson on Elec., sec. 256." It puts the defendant on notice and comes within the reasoning in that case upon which the rule is sustained, *i. e.,* that it enables "the company to inquire into the nature and circumstances of a mistake in or the delay or non-delivery of the message while the matter is still within the memory of witnesses." The service of the summons puts the defendant on inquiry fully as much as filing the complaint, at possibly a distant court-house, would do. Indeed, Croswell Elec., sec. 557, questions whether this stipulation in the blank is binding upon the sendee at all, but we need not pass upon that point.

The last objection is that the wrong, if any, occurred in South Carolina and is to be tried by the laws of that State, which it is alleged did not at that time allow the recovery of damages for mental anguish. A case exactly in point is *Reed v. Tel. Co.,* 58 Am. St. Rep. (Missouri), 609, 34 L. R. A., 492, which holds that "if a telegraph message is delivered to the company in one State to be by it transmitted to a place in another State, the validity and interpretation of the contract, as well as its liability thereunder, is to be determined by the laws of the former State." The contract was made at Mooresville in this State; it is a North Carolina contract, and damages for its breach are to be assessed according to the liability attaching to such contract under our laws. The Code, sec. 194 (2), authorizes an action against a foreign corporation

"by a plaintiff, not a resident of this State, when the cause of action shall have arisen   *   *   *   within this State."

Our authorities have been uniform and unanimous, from the first case (*Young v. Tel. Co.*, 107 N. C., 370, 22 Am. St. Rep., 883, 9 L. R. A., 669) down to the present, that damages are recoverable for mental anguish in cases like the present. In *Sherrill v. Tel. Co.*, 116 N. C., at p. 658, the divided sentiment in the Courts of other States was referred to, with citation of the States on either side, and since then there has been a growth of sentiment elsewhere expressed in many States by statutory enactments in support of the views we have upheld. In South Carolina the North Carolina rule was adopted by statute 20 February, 1901, which is set out in *Meadows v. Tel. Co.*, 132 N. C., at page 44. In Virginia, by chapter 698, Acts 1900, it is enacted: "Grief and mental anguish occasioned to the plaintiff by the aforesaid negligent failures (in 'receiving, copying, transmitting or delivering dispatches, or disclosure of the contents of my private dispatch') may be considered by the jury in the determination of the *quantum* of damages." Statutes of similar purport have been enacted in Arkansas and in other States. In Watson Pers. Inj., sec. 450, he says: "Certainly, on principle, the best considered position is that where mental suffering naturally and proximately results from the default of a telegraph company, whether regarded as a contract or a tort, damages therefor should be recoverable"; and sums up the States holding by judicial determination that doctrine, which were then (1901) already in the majority (see States holding the contrary view, *Ibid.*, sec. 462), irrespective of those which have adopted the majority view by statute like Virginia and South Carolina above quoted, and others. Among those since adhering by judicial decision to the views we have entertained is Louisiana. In *Graham v. Tel. Co.*, 109 La., 1071 (1903), *Nicholls, C. J.*, in a learned opinion, citing numerous authori-

ties, sustains by conclusive reasoning the right to recover for mental anguish in cases like the present. He quotes in the original tongue several paragraphs from The Code Napoleon, showing that damages for mental anguish are not always barred when there is no physical injury, especially Art. 1382, *"Un dommage materiel n'est pas la soule qui donne ouverture a l'action en reparation. Il suffit d'un interest moral"; and* Art. 1133, *"Le prejudice peut etre materiel ou moral. Bien que le prejudice moral ne se compose pas d'elements faciles a resumer au chiffre comme le prejudice materiel il en doit etre tenu compte."*

We have heretofore (107 N. C., at p. 385) quoted that great lawyer, *Cicero* (from his 11th Philippic against Marc Anthony), to show that the same view was held among the bar that gave to the world the great Code of the Civil Law, *"Nam quo major vis est animi, hoc sunt graviora ea quae concipiuntur animo quam illa quae corpore."*

Not to prolong the discussion in such action as this for breach of contract, there is the same reason for recovery of damages without physical injury as in actions for breach of contract of marriage and the like, *i. e.,* that in both cases the parties have notice that mental anguish will be the probable consequences of a breach of contract. If viewed as an action of tort there is the same ground of recovery of damages for mental anguish caused thereby as in actions for seduction and the like; besides, there is the further reason that the telegraph company has violated a public duty which it undertook to discharge in consideration of the grant of its charter. A strong statement of this view may be found 3 Sutherland Damages (4 Ed.), sec. 975; Joyce Elec. Law, sec. 825.

The judgment of non-suit should be set aside, and a new trial is ordered.

Petition allowed.