GREEN v. TELEGRAPH CO.

(Filed November 15, 1904).

TELEGRAPHS—*Mental Anguish—Damages—Messages.*

> In an action against a telegraph company to recover damages for failure to deliver a message, compensatory damages may be awarded though the message does not relate to sickness or death, mental anguish being shown.

ACTION by Willie H. Green against the Western Union Telegraph Company, heard by *Judge Frederick Moore,* at January Term, 1904, of the Superior Court of HALIFAX County.

The material facts are thus briefly stated by the defendant: This is the plaintiff's appeal from a judgment sustaining the defendant's demurrer. The complaint states that the plaintiff was a girl of sixteen, living in Weldon, the daughter of Isaac E. Green; that the defendant telegraph company maintained offices at Weldon and Columbia, and on September 23, 1903, she left Weldon to go to Spartanburg, S. C., via Columbia, and that it was necessary for her to remain over in Columbia during the night. That the agent of the defendant company at Weldon was acquainted with the young lady and her father, and the father informed the agent that he greatly desired some one to meet his daughter in Columbia. That immediately after the train on which the young lady was traveling left Weldon, her father, Dr. Green, delivered the following message to the defendant's agent in Weldon, directed to "Mrs. Jno. B. Lee, 2010, Main Street, Columbia, S. C.":

"Willie leaves here on Coast Line train 39 to-day. Meet her.

　　　　　　　　　(Signed)　　　"I. E. GREEN."

This message was taken  as addressed to "Mrs. Knoblee, 2010 Main Street," and was not delivered until the next morning, when Mrs. John B. Lee inquired for it at the telegraph office at Columbia.

The plaintiff, Miss Willie Green, arrived in Columbia about 12 o'clock the same night, and found no one to meet her.  She was naturally disturbed and anxious; the conductor put her in charge of the colored matron at the station in Columbia, the matron secured a hack, and after some delay she was driven to the house of her friend, Mrs. Lee; that by reason of this negligence upon the part of the defendant the plaintiff suffered mental anguish.

Upon this the defendant demurred to the complaint, for that it did not state facts sufficient to constitute the cause of action, which, under the circumstances set forth, entitled the plaintiff to recover damages for so-called mental anguish, and that the disappointment and annoyance which the plaintiff calls mental anguish, arising under the circumstances set out in the complaint, is not a legal ground for damages for mental anguish.  His Honor sustained the demurrer, and the plaintiff appealed.

*Day & Bell, Murray Allen* and *W. E. Daniel,* for the plaintiff.

*F. H. Busbee & Son* and *R. C. Strong,* for the defendant.

DOUGLAS, J., after stating the facts.  The defendant in its brief thus states the question intended to be presented: "This case baldly presents the question, which it has been apparent would soon arise, whether the barriers are to be thrown down and every disappointment, annoyance or vexation which may arise from a delay or a misdirected telegram can be the subject of an action for mental anguish.  In other words, whether any annoyance, disappointment, vexation or

anxiety on account of a missing friend at the station, or from other cause, can be dignified by the name of mental anguish, and adjudged to rank in the same class with the poignant grief arising from a failure to reach the bedside of a dying wife in time to receive her last adieus."

We are fully aware of the importance of the question thus presented, and have given it the careful consideration which it deserves. We do not desire to impose any additional burdens upon telegraph companies or require any unnecessary restrictions; but we cannot ignore the essential purposes of their creation. A telegraph company is a quasi-public corporation—private in the ownership of its stock, but public in the nature of its duties. It has all the powers of a private corporation, such as a separate legal existence, perpetual succession and freedom from individual liability; and possesses also in addition thereto, the extraordinary privileges which under our Constitution can be exercised only by such corporations as are organized for a public purpose, and then only when necessary for the proper fulfillment of such purpose. Among the extraordinary privileges enjoyed by such corporations is the condemnation of private property, which can never be taken for a private purpose. The acceptance of such privileges at once fixes upon the corporation the indelible impress of a public use. A telegraph company is essentially public in its duties. Without such public duties there would be neither reason for its creation nor excuse for its continued existence. In fact, being the complement of the postal service, it is one of those great public agencies so important in its nature and far-reaching in its application that some of our wisest statesmen have deemed its continued ownership in private hands a menace to public interests. Hence it follows, both upon reason and authority, that the failure of a telegraph company to promptly and correctly transmit and deliver a message received by it is a breach of

a public duty imposed by operation of law. In the words of a great English Judge: "A breach of this duty is a breach of the law, and for this breach an action lies, founded on the common law, which action wants not the aid of a contract to support it." This has been expressly held by this Court in *Cashion v. Telegraph Co.,* 124 N. C., 459; *Laudie v. Telegraph Co.,* 124 N. C., 528; and *Cogdell v. Telegraph Co.,* 135 N. C., 431. The demurrer admits all the facts alleged in the complaint construed in the light most favorable to the plaintiff. It is therefore admitted that the message was received by the defendant and not delivered until the following day when called for by the sendee. This of itself raises the presumption of negligence. *Sherrill v. Telegraph Co.,* 116 N. C., 655; *Hendricks v. Telegraph Co.,* 126 N. C., 304; *Laudie v. Telegraph Co.,* 126 N. C., 431; *Rosser v. Telegraph Co.,* 130 N. C., 251; *Hunter v. Telegraph Co.,* 130 N. C., 602; *Cogdell v. Telegraph Co.,* 135 N. C., 431. Aside from this presumption we think the facts alleged clearly tend to prove negligence on the part of the defendant. The telegram was addressed to Mrs. John B. Lee, 2010 Main street. The name of the sendee was changed in transmission to Mrs. Knoblee. The defendant urges in excuse for such negligence the similarity between the telegraphic J and K. This is no legal excuse. *Cogdell v. Telegraph Co.,* 135 N. C., 431. If the defendant adopts a code intrinsically liable to such mistakes it should exercise the greater care in preventing them. The defendant's agents could at least have inquired at the street address given in the telegram. Such inquiry would doubtless have resulted in ascertaining the identity of the sendee. Such was the result when Mrs. Lee called for the telegram on the following day. The plaintiff alleges that she suffered mental anguish, and this is also admitted by the nonsuit. Aside from this, we think the circumstances in which she was placed may well have caused it.

A girl sixteen years of age finds herself after midnight in a strange city, riding two miles in a carriage with an unknown driver. It is true she suffered no insult or physical injury, but the question is what would be the natural effect upon the mind and nervous system of a child of her age. Nature offers no flower more tender or more fair than budding womanhood, and around it every protection will be thrown by the hand of the law. The defendant was informed of the full purpose of the telegram and the importance of its immediate delivery. It, therefore, remains only to consider whether, under the admitted facts, the plaintiff is entitled to recover compensatory damages for the mental anguish she may have suffered as the direct result of the defendant's negligence. We see no reason why she cannot, and we find no authority in this State to the contrary.

It is said by the defendant that "It does not require to be pointed out that if the barriers are once thrown down, and the disappointment, annoyance or unnecessary alarm occasioned by a delayed telegram shall be allowed to be the subject of damages, every barrier which the law has erected in the limitation of actions for damages will be thrown down and the waters will be out in deluge." We do not think that any such result will follow our decision in this case; but such a possibility should not deter us from giving to the plaintiff the full measure of justice to which she is entitled. The defendant in its brief quotes the following extract from the decision of this Court in *Chappell v. Ellis,* 123 N. C., on page 263, which we may here repeat: "But it is urged that the principle of the Cashion case, if carried to its fullest extent, would directly lead to the recovery of damages for all kinds of mental suffering. It may be, but we feel compelled to carry out a principle only to its necessary and logical results, and not to its furthest theoretical limit in disregard of other essential principles. * * * We do not

feel at liberty to adopt any one principle as the sole guide of our decisions and to carry it out to extreme and dangerous limits, regardless of other great principles of justice and of law so firmly established by reason and precedent." As we have already said, we are now considering the question of damages resulting from the breach of a public duty by a quasi-public corporation. How far this principle may in the future be extended to other corporations or to other circumstances we cannot tell; and in the absence of any matter before us involving its further consideration, we have neither the right nor the wish to limit or extend its application as a pure matter of legal speculation. As the cases come up we will decide them as best we may. In the meantime we will try to confine our opinion to the facts of this case and others identical therewith. We may, however, say that there seems a material difference between an incidental tort by an individual or a private corporation and the breach of a quasi-public corporation of a public duty relating to the essential object of its creation. The exact nature of this difference it is difficult and at present unnecessary to determine.

It is true no case has been called to our attention in which this Court has allowed damages for mental anguish arising from the failure to deliver a telegram except in cases relating to sickness or death. On the other hand, we are not aware of any case in which this Court has drawn any such distinction either in the allowance or disallowance of damages. The nearest approach to any such limitation that the diligence of the learned counsel for the defense, aided by our own research, has been able to find is *Chappell v. Ellis,* 123 N. C., 259, in which a poor old woman, against whom a writ of possession had been issued, was thrown out upon the highway. In that case the eviction was lawful, and it was merely the unlawful taking of certain personal property, nearly all of which was soon after returned, that could be considered in

the assessment of damages. It is true this Court in distinguishing that case from Cashion's case, says: "The opinion in Cashion's case was hinged on the solemn fact of death, and the associations inseparable from the final severance of all earthly ties by an immortal spirit. The anguish of a mother bending over the body of her child, every lock of whose sunny hair is entwined with a heartstring, and kissing the cold lips that are closed forever, cannot come within the range of comparison with any mental suffering caused by the loss of a pig." This language, correctly describing the facts in Cashion's case, was used to more fully and forcibly distinguish it from Chappell's case, and not as a limitation upon the general doctrine. Its purpose and application is apparent from the following language of the Court in the same case: "The doctrine of mental suffering or 'mental anguish,' as we prefer to call it, as indicating a higher degree of suffering than arises from mere disappointment or annoyance, contemplates purely compensatory damages, and, as far as we are aware, has never been applied to cases like that at bar. This case would come under the rule of exemplary, punitive or vindictive damages, as they are variously denominated. Such damages, which look not only to the loss sustained by the plaintiff, but still more to the conduct of the defendant, can be allowed only where there is shown, on the part of the defendant, malice, wantonness, oppression, brutality, insult, gross negligence, or certain cases of fraud. * * * We are not insensible to the pitiable condition of the plaintiff, thrown upon the highway without shelter and with but little to eat, but we must remember that her shelterless condition, which probably caused the greater part of her distress, was the result of a lawful eviction. Charity would have dictated a different course, but that great virtue is not enforcibe in a court of law."

Both before and since that opinion was rendered this Court

has recognized the doctrine in cases merely of sickness. While one may lead to the other there is a vast difference between sickness and death, and there seems no reason why principles recognized in the former should not apply to kindred cases of equal strength and importance. While we find no direct decision of the question in any of our cases, we think that their line of reasoning tends to recognize the legal existence of mental suffering apart from sickness and death. This is especially so in *Young v. Telegraph Co.*, 107 N. C., 370, 9 L. R. A., 669, 22 Am. St. Rep., 883; *Morton v. Telegraph Co.*, 130 N. C., 299; *Bright v. Telegraph Co.*, 132 N. C., 317; and *Bryan v. Telegraph Co.*, 133 N. C., 603. In *Cashion v. Telegraph Co.*, 123 N. C., 259, this Court quotes as follows from Shearman & Redfield on Negligence, sec. 605 : "In case of delay or total failure of delivery of messages relating to matters not connected with business, such as personal or domestic matters, we do not think that the company in fault ought to escape with mere nominal damages on account of the want of strict commercial value in such messages. Delay in the announcement of a death, an arrival, the straying or recovery of a child, and the like, may often be productive of an injury to the feelings which cannot be easily estimated in money, but for which a jury should be at liberty to award fair damages." This same language is quoted with approval in *Young v. Telegraph Co.*, 107 N. C., on page 373.

In neither Bright's nor Cashion's case was the plaintiff the sendee of the message, nor was she deprived of the satisfaction of attending the death or burial of the deceased. In both cases she sued on account of the absence of a relative to whom she looked for consolation and assistance. The death of the deceased was the occasion rather than the cause of the anguish for which she recovered. In cases where great stress is laid upon the fact of sickness or death, it is with the view of fixing the defendant with notice of the importance of the

message where it has received no special information, like those cases where near relationship is relied on simply to raise the presumption of suffering. In *Lyne v. Telegraph Co.,* 123 N. C., 129, this Court says, on page 133: "The same contention (that the relation of the parties was not disclosed) was made in that case that the defendant makes in this, and the Court says, among other things, 'that the rule insisted on by appellant is too restricted to be safely applied to communications sent by the electric telegraph. * * * When such communications relate to sickness and death, there accompanies them a common sense suggestion that they are of importance, and that the persons addressed have in them a serious interest.'" In *Cashion v. Telegraph Co.,* 124 N. C., 459 (second appeal), this Court says, on page 464: "The telegram in question stated that Mr. Cashion had been killed while at work, and on its face suggested that it was of unusual importance to somebody. The defendant knew that somewhere there was a vacant chair, that some one the lonely death-watch was keeping. Who or where, it mattered not to the defendant, as it had no more right to wrong one person than another."

Another significant fact is the growing tendency of judicial opinion to allow compensatory damages for mental suffering even when connected with any physical suffering. This is forcibly illustrated in the case of *Osborn v. Leach,* 135 N. C., 628, where this Court holds that in cases of libel, where the statute forbids punitive damages *actual* damages may be allowed for mental suffering alone. This Court says, on page 633: "This being an action upon a libel *per se* the plaintiff has a right to recover *compensatory* damages. Newell on S. & L., 43, Hale, *supra,* page 99. Compensatory damages include all other damages than punitive, thus embracing not only special damages as direct pecuniary loss, but injury to feelings, mental anguish and damages to character or repu-

136——32

tation. 18 Am. & Eng. Ency. (2 Ed.), 1082, *et seq.;* Hale, *supra,* 106 and 99. Actual damages are synonymous with compensatory damages. Newell, *supra,* 839; 18 Am. & Eng. Ency. (2 Ed.), 1081, *et seq.* Damages for mental suffering are actual or compensatory. They are not special nor punitive, and are given to indemnify the plaintiff for the injury suffered. 1 Am. & Eng. Ency. (2 Ed.), 602. The law infers actual or compensatory damages for injury to the feelings and reputation of the plaintiff from a libel calculated to humiliate him or injure his reputation or character."

Of course, in cases merely of slander or libel there could be no physical pain except as the reaction of mental suffering. The mere fact that a shock to the feelings which goes directly to the mind without ever touching the body may produce such reaction upon the physical system as even to endanger life itself is *per se* the surest proof of the existence of actual suffering and the strongest argument for the allowance of compensatory damages. If such suffering actually results directly from the wrongful act of the defendant, it would seem to make but little difference what were the collateral circumstances.

The case at bar was ably and elaborately argued, orally and by brief, on both sides; and in the end we find ourselves compelled to decide the question upon the reason of the thing rather than any weight of decided authority. Of course we could not look for precedents where the doctrine of mental anguish is not recognized; and even where it is, the facts of the respective cases generally fall short of direct application. With few exceptions, as in our own State, the element of death or sickness appears directly or indirectly in the case; but, as with us, we find no decision containing any such limitation of the doctrine. The cases most nearly in point are those of *Western Union Telegraph Co. v. Procter,* 6 Tex. Civ. App., 300; and same plaintiff in error against

Taylor, 81 Southwestern Rep., 69. In the latter case, filed
April 3, 1904, and reaffirmed by the denial of a rehearing on
June 1, 1904, it was held, quoting the head-note, that: "Where
a wife telegraphed to her husband to meet her, but, owing
to the telegraph company's negligence, the message was not
delivered, and she arrived at the railroad station at night
and went to a hotel where she failed to secure lodging owing
to its crowded condition and from which, after a delay, she
voluntarily went, escorted by a stranger who treated her with
courtesy in search for her husband, to a second hotel where
she found him, she was not entitled to damages from the
telegraph company for mental suffering accruing from the
time she reached the first hotel until she found her husband."
We do not very clearly understand the reasoning of this case,
nor do we see the force of the apparently arbitrary distinc-
tion between the mental suffering incurred between the depot
and the first hotel, and that between the first hotel and the
second. The latter seems to have been based upon the belief
of the appellate court that in fact there was no such suffer-
ing. The point pertinent to the case at bar is that the plain-
tiff was allowed to recover compensatory damages for mental
suffering disconnected from any physical pain or attending
circumstances of sickness or death.

In Proctor's case the Court held, quoting head-note, that:
"R eloped with plaintiff's daughter, aged fifteen years, going
towards the county seat to procure license and be married.
Plaintiff at once telegraphed the County Clerk, stating the
girl's age and forbidding the issuance of license, but through
negligent delay in the delivery of the message it did not reach
the Clerk until after the license had been issued and the par-
ties married: *Held,* that plaintiff was entitled to recover of the
telegraph company damages for the loss of his daughter's
services up to the age of eighteen, and also for the mental
distress involved." In that case the Court, on page 304,

says: "We think, also, that he was entitled to recover for the mental distress involved. We cannot distinguish this case, in principle, from the case of *Telegraph Company v. Stuart,* 66 Texas, 584 (relating to sickness and death), and that line of decisions. The solicitude of a parent for the welfare of an only daughter of tender years, committed to his care both by nature and law, is certainly not less substantial than the affection of one brother for another."

Although not a telegraph case, we are much impressed with the reasoning of the Court in *Missouri P. Ry. Co. v. Kaiser* (Texas), 18 Southwestern Rep., 305, where a girl sixteen years of age, accompanied only by a girl companion, was ejected from the train at a small town where she was a stranger and where she remained an hour before she was discovered by friends. The Court therein says: "It is contended that the Court erred in refusing a special charge asked by the defendant to the effect that plaintiff could not recover for mental suffering arising from any supposed or anticipated danger, because there was no aggravation attending her leaving the train nor in the action of the conductor, and, such being the case, she could only recover for inconvenience, loss of time, labor, and expense of reaching her destination. We do not think that this charge should have been given. We do not think that the mental condition of the plaintiff can properly be considered as arising 'from a supposed or anticipated danger.' The circumstances of two inexperienced girls, unaccustomed to traveling, suddenly ejected from a train at a small railroad station, where they were entire strangers, and contrary to provisions made for their safety by their careful parents, were well calculated to arouse in their minds feelings of insecurity and danger that would not have been properly characterized by referring to them in a charge as merely 'supposed or anticipated.'" This language singularly fits the case at bar:

In the recent case of *Gillespie v. Railroad Co.,* 70 North-western Rep., 857, decided April 26, 1904, the Court of Appeals of New York in an able and learned opinion held that a passenger on a street car can recover from the company for injuries to her feelings caused by the insulting language of the conductor, and that such damages are compensatory and not exemplary. The opinion quotes with approval the following language from Thompson on Negligence, sec. 3288: "Damages given on the footing of humiliation, mortification, mental suffering, etc., are compensatory and not exemplary damages. They are given because of the suffering to which the passenger has been wrongfully subjected by the carrier. The quantum of this suffering may not, and generally does not, depend at all upon the mental condition of the carrier's servant, whether he acted honestly or dishonestly, with or without malice." Further on in the opinion the Court uses the following language: "Humiliation and indignity are elements of actual damages, and these may arise from a sense of injury and outraged rights in being ejected from a railroad train without regard to the manner in which the ejection was effected, though only done through mistake." The Court also says: "The relation between a carrier and its passenger is more than a mere contract relation, as it may exist in the absence of any contract whatsoever. Any person rightfully on the cars of a railroad company is entitled to protection by the carrier, and any breach of its duty in that respect is in the nature of a tort, and recovery may be had in an action of tort as well as for a breach of the contract."

We have quoted from this opinion because it unequivocally asserts the principle that a plaintiff can recover in tort compensatory damages for purely mental suffering, without any physical pain whatever, resulting from the breach of public duty by a common carrier. Telegraph and railroad companies are in their nature essentially similar as being quasi-

public corporations organized for a public purpose and fixed with a public use. For the breach of a public duty they are both liable in tort, and we see no reason why similar injuries arising from such breach of duty should not be governed by similar principles. That it is well settled in railroad cases is abundantly shown by the authorities cited in the last-named case; and we think that those authorities are applicable by analogy to the case at bar. For this reason we have not deemed it necessary to cite the decisions allowing compensatory damages for mental suffering, without any physical pain, in such cases as seduction, breach of promise, slander and libel, malicious arrest and prosecution, false imprisonment, criminal conversation, and kissing a female against her will.

The defendant apparently relies upon the case of *McAllen v. Telegraph Co.*, 70 Texas, 243, where the plaintiff sent a telegram to his father, who lived seventy-five miles from a railroad, to send the family carriage to take him home. The message was not delivered and the carriage was not sent; whereupon the plaintiff took up the idea that "some dreadful calamity had befallen his father." He thereupon took passage in a "jerkey" and on a buckboard, and subsequently sued the telegraph company for mental anguish as well as physical suffering. The Court held that neither the imaginary death of his father nor the bouncing of the buckboard was within the contemplation of the parties. That case has no application to the one at bar, coming clearly within the rule laid down in *Bowers v. Telegraph Co.*, 135 N. C., 504.

We are struck with the phrase so often used, notably by Joyce on Electric Law, "Telegrams as to sickness, death, *or the like.*" The meaning of the last three words is not defined; but there is an unwelcome suggestion upon which the mind refuses to dwell, of what might happen to a defense-

less girl in the deserted streets of a city at midnight that may well be likened to death itself.

In this connection we have endeavored to ascertain the latest decisions of the courts of the different States upon this subject. When we remember that this doctrine of mental anguish in telegraph cases is of recent origin, having theretofore been deemed contrary to the principles of the common law, and has made constant progress in opposition to the preconceived ideas of courts and jurists, it seems that it must possess much inherent strength and merit. This is especially evident from the actions of certain courts, some of them of the highest reputation, which, while denying the doctrine in telegraph cases that damages for mental suffering may be recovered in the absence of physical pain or injury, allow it in cases of a kindred nature such, for instance, as insulting or humiliating a passenger.

The following is the present status of the doctrine in the different States as far as we have been able to ascertain. Its history in the State of Texas, where it was first specifically announced, may be briefly stated as follows: The first case in that Court is the celebrated one of *So Relle v. Telegraph Company,* 55 Texas, 308. There it was held that there could be a recovery in such cases. The next cases were *Levy v. Railway Company,* 59 Texas, 542, and *Levy v. Same Company,* in same volume, on page 563. These cases were construed by the profession as in some respects modifying the doctrine in the first case. The question again arose in *Western Union Telegraph Company v. Stuart,* 66 Texas, 580, and the rule announced in So Relle's case was followed. That case was very thoroughly considered, and the decision then made has settled the law in that State upon the main question. Its reports show some fifty cases since in which the doctrine has been followed without question.

In Tennessee the doctrine was first announced in *Wads-*

*worth v. Telegraph Company,* 2 Pickle, 695, and has been reaffirmed in *Telegraph Company v. Mellen,* 96 Tenn., 72, and *Telegraph Company v. Gray,* 108 Tenn., 39.

In Alabama the doctrine was expressly recognized in *Telegraph Company v. Henderson,* 89 Ala., 510; but seems to have been somewhat modified in the more recent case of *Telegraph Company v. Crumpton,* 138 Ala., 632, which appears to be the latest decision upon the subject.

In Kentucky the leading case, in which such damages are allowed, is *Chapman v. Telegraph Company* 90 Ky., 266. The doctrine is affirmed in the later cases of *Telegraph Company v. Van Cleave,* 107 Ky., 464, and *Telegraph Company v. Fisher, Id.,* 513.

In Iowa damages for mental anguish unaccompanied by physical pain are allowed. The leading case is *Mentzer v. Telegraph Company,* 93 Iowa, 752, a carefully considered case which has been widely cited. This case stood as the only expression of that Court upon the subject until the recent case of *Cowan v. Telegraph Company,* 98 N. W., 281.

In Louisiana such damages are allowed. The leading and most recent case is *Graham v. Telegraph Company,* 34 Southern Reporter, 91.

In South Carolina they are also allowed. At first the doctrine was denied in *Lewis v. Telegraph Company,* 57 S. C., 325. This case was followed by an act of the Legislature (23 Stat., 748; Code (1902), Vol. I, sec. 2223), permitting damages in such cases. This statute was held to be constitutional in *Simmons v. Telegraph Company,* 63 S. C., 429, which has subsequently been uniformly followed.

In Nevada the doctrine has been recently adopted in the case of *Barnes v. Telegraph Company,* 76 Pacific Reporter, 931, in an able and learned opinion by *Fitzgerald, J.*

In Washington there does not appear to be any decision upon a telegraph case, but the principle is fully recognized

in *Davis v. Tacoma Railway and Power Company,* 35 Wash., 203, in which telegraph cases are cited with approval.

The doctrine is denied in the following States, as is shown by the most recent cases:

Florida: *Telegraph Company v. Saunders,* 32 Fla., 434, apparently the only case upon the subject in that State.

Georgia: *Chapman v. Telegraph Company,* 88 Ga., 763; *Giddens v. Telegraph Company,* 111 Ga., 824.

Illinois: *Telegraph Company v. Halton,* 71 Ill. App., 63. The question does not appear to have come before the Supreme Court of that State.

Indiana: *Telegraph Company v. Ferguson,* 157 Ind., 64.

Kansas: *West v. Telegraph Company,* 39 Kansas, 93, appears to be the latest telegraph case in that State involving the question; but that case has been reaffirmed in *Railway Company v. Dalton,* 65 Kansas, 161.

Minnesota: *Francis v. Telegraph Company,* 58 Minn., 252, which is the only case in that state.

Mississippi: *Rogers v. Telegraph Company,* 68 Miss., 748. This case has apparently been doubted in one or two subsequent cases, which, however, are not directly in point.

Ohio: *Morton v. Telegraph Company,* 53 Ohio State Rep. 431, seems to be the only case in that State involving the question.

West Virginia: *Davis v. Telegraph Company,* 46 W. Va., 48.

Wisconsin: *Summerfield v. Telegraph Company,* 87 Wis., 1.

Virginia: *Connelly v. Telegraph Company,* 100 Va., 51. In this State a statute was passed upon the subject, which apparently failed of its purpose.

In the following States there have been no decisions in telegraph cases upon the question so far as we have been able to ascertain: Arizona, California, Colorado, Connecticut,

Delaware, Idaho, Maine, Maryland, Massachusetts, Michigan, Montana, Nebraska, New Hampshire, New Jersey, New York, North Dakota, Oregon, Pennsylvania, Rhode Island, South Dakota, Utah, Vermont, Wyoming.

As the primary doctrine of mental anguish in telegraph cases has been too long and firmly settled by this Court to be now called in question, if decided cases stand for aught; and as we feel impelled by both reason and authority to apply these principles to the case at bar, the judgment of the Court below is reversed and the demurrer overruled.

Reversed.

CONNOR, J., concurs in result.