BROWN and CONNOR, JJ., dissent.
There was testimony to the effect that on the morning of 26 June, 1904, plaintiff's wife left Durham, N.C. to go to Washington, N.C. to which place her husband had recently moved his residence. In the regular course of travel, Mrs. Dayvis would have reached Washington *Page 91 
on the afternoon of the 26th, at about 6 o'clock; that she and two children who accompanied her were all sick, and she had written to the plaintiff, her husband, on Friday before leaving Durham on Sunday; that the plaintiff had sent his wife enough money to defray her expenses from Durham to Washington, via Selma and Rocky Mount. At Rocky Mount, by misdirection of a railroad station employee, she and her children were put on the train going to Weldon, where they arrived about 5 p. m., and were unable to go on to Washington (81) till the afternoon of the following day, 27 June; that the plaintiff, who was expecting his wife and children on the afternoon train on 26 June, had gone up on the morning train to meet them had boarded the returning train in the afternoon, expecting to meet them at a station called Pactolus; he inquired for them and could get no information; he looked through the train and found their trunk checked through from Durham to Washington. Immediately on arriving at Washington, he went to his hotel and inquired for a telegram and none had been received; he then went to the telegraph office and it was closed; this was about 6:30. The train had arrived on time at about 6:20. He endeavored to get a telephone communication with his wife and children, but failed, and could hear nothing from them until their arrival on the train of the afternoon of the 27th, as stated. He was aware they were sick, and had only money enough to pay their way to Washington, and he suffered great distress and mental anguish by reason of his uncertainty as to their whereabouts, etc.; that the plaintiff had been a resident in Washington about one month, was at the Hotel Pamlico, and had received telegraphic messages at that place during his stay.
Mrs. Dayvis testified that when she arrived at Weldon with her children at 5 p. m., 26 June, she went to the office of defendant company and wrote a message to her husband on one of its blanks as follows: "J. L. Dayvis, Washington, N.C. Got left. Be there at 7:30 o'clock tomorrow. D." She delivered it to the operator. She stated that she told the operator that she had been thrown over in Weldon, had two children with her who were sick, her husband was to meet her and would be worried unless he got the message, and told him to be sure to get it off right away, and he said he would; that she came back in an hour and a half and asked the operator if he had sent the message, and he said he got it off all right; that the message was never received by the plaintiff.
The operator testified that the message was given him by Mrs. (82) Dayvis at 5:12 in the afternoon of the 26th, and he sent it on not long after; that not being able to tell, when he read the message, whether it was signed "D." or "W.," he carried the same to the hotel where she *Page 92 
was and asked about it, and was told the letter was "D"; that she did not tell him who J. L. Dayvis was, nor what her name was, nor that she and her children were sick, nor that her husband would meet her and be worried if he did not receive the message; that all she said was that she had got on the wrong train at Rocky Mount, and she asked the witness to get the message off promptly; that she came back about six o'clock, or later, and asked if the message had been sent and heard from; he replied, "sent, but not heard from."
Under the charge of the Court there was a verdict and judgment for the plaintiff and the defendant excepted and appealed.
At the close of the plaintiff's testimony, and again at the close of the entire testimony, there was a motion to nonsuit by the defendant, and exception duly taken.
The decisions of this Court have established the principle that the addressee of a telegram, where there has been a wrongful failure to deliver or negligent error in transmitting the message, may, under certain circumstances, recover compensatory damages for mental anguish where the message is for his benefit or concerns his domestic or social interests, and this, independent of any bodily or substantial pecuniary injury. Young v. Tel. Co., 107 N.C. 370; Sherrill v. Tel. Co., (83) 109 N.C. 527; Kennon v. Tel. Co., 126 N.C. 232; Wadsworth v. Tel. Co., 86 Tenn. 695. If mental anguish is shown to exist it is not required for a recovery that the claimant should be a very near relative. Bright v. Tel. Co., 132 N.C. 317; Hunter v. Tel. Co.,135 N.C. 458. Nor is it necessary that the telegram should contain a message concerning sickness or death. Green v. Tel. Co., 136 N.C. 489, 506. It is necessary, however, that the grievance complained of should amount to a high degree of mental suffering, within the natural and correct definition of mental anguish, and not consist simply of annoyance or disappointment and regret. Hancock v. Tel. Co., 137 N.C. 497.
The decisions further hold that before a recovery can be had on that account, the defendant company must be notified that mental anguish will naturally and reasonably follow as a result of its misconduct, either from the character and contents of the message itself or from facts within its knowledge, or brought to its attention at the time of accepting the message for transmission, or certainly in time to have enabled it to avoid the consequence complained of by due care and diligence. Kennon *Page 93 v. Tel. Co., supra; Williams v. Tel. Co., 136 N.C. 87; Green v. Tel. Co.,136 N.C. 489; Cranford v. Tel. Co., 138 N.C. 162.
The judge told the jury that such notice must be brought home to the defendant, and under his charge the jury have necessarily decided that the plaintiff's version as to what took place, at the time the telegram was handed to the defendant's agent, was the true one.
Applying these principles to the facts of the case before us, the plaintiff has made out a cause of action. The testimony of Mrs. Dayvis on that point was as follows: "When I got to Rocky Mount I went to Weldon. I got to Rocky Mount about 2 p. m. I got to Weldon about 5 p. m., registered at the hotel, went to the telegraph office (84) (identifies the message written out), gave it to the operator, told. him I had been thrown over in Weldon, had two children with me; they were sick, my husband was to meet me and would be worried unless he got the message. I told him to be sure and get it off right away, and he said he would." (The defendant in apt time objected to all the conversation with the defendant's agent; objection overruled and defendant excepted.) "I came back in an hour and a half and asked the agent if he had heard anything from the message and he said he had not yet, and I asked him if he had sent it off, and he said he got it off all right."
The Court is of opinion that there was ample testimony to notify the defendant that if the message was not delivered and the husband was thereby left in ignorance of the whereabouts and condition of his wife and children, it would be to him a matter of grave concern and might well result in actionable suffering and mental anguish. There was no error in overruling the defendant's motion to nonsuit.
In some of the cases on the subject of mental anguish, there is a strong intimation that the action should be in tort, as involving a breach of public duty, and there is high authority to the effect that only in this character of action can a suit be sustained by the addressee of a message. In awarding the damages to be recovered, however, where the right to damage has been established, the decisions of this Court have thus far uniformly applied the law governing cases for breach of contract, and this course seems very generally to have obtained. 27 A. E. (2 Ed.), 1059; Thompson on Elec., sec. 386.
In the examination of Mrs. Dayvis, who was a witness for plaintiff, she was asked by the plaintiff's counsel if she and her children had anything to eat in Weldon, the day they were there, and the witness replied, "Only a few cakes and a couple of coca colas." The witness was then asked why, and she replied "Because they had no money." This evidence was admitted over the objection by defendant, and the defendant excepted. This is an action by Mr. Dayvis to recover (85) *Page 94 
damage for mental anguish by reason of his just alarm from being left uninformed as to the placing and condition of his wife and children. The actual privation and suffering of Mrs. Dayvis and her children are not pertinent to the inquiry. The testimony, if competent at all, could only have been so held as corroborative evidence, and under the circumstances of the case the Court inclines to the opinion that the admission of the testimony would be reversible error but for the fact that, in the charge, the court entirely withdrew it from the consideration of the jury.
In response to prayers for instruction preferred by the defendant's counsel, the judge instructed the jury as follows: "I have been requested by counsel for defendant to instruct you that you should not consider any suffering or anxiety which the plaintiff's wife or children suffered by reason of taking the wrong car to reach Rocky Mount and having to stop at Weldon, or being ill during the time, or having no money with them. I give you that instruction. The defendant also asked me to instruct you that the jury should not consider any evidence with reference to the plaintiff's anxiety caused by the mental or physical suffering of his wife or children, due to the fact that they were unwell and without means to support them. The Court gives you that instruction." The defendant concedes that this part of the charge would amount to a withdrawal of the objectionable testimony if it stood alone, but contends that it was in effect again submitted by reason of the following addition to the charge: "You will note that these last two instructions relate to recovery based upon the idea of the suffering of the wife or of the children, or of their anxiety and trouble that they may have had at Weldon. You will understand that this action is not brought by the wife nor by the children; it is brought by the husband; and therefore you are limited in this case to a consideration of the husband and his suffering (86) and mental anxiety by reason of these circumstances." The Court does not think that these concluding words of the judge should receive the interpretation and effect insisted on by the defendant.
The judge had just in express terms, and in response to a special request, told the jury that neither the privations of Mrs. Dayvis at Weldon nor her husband's mental anxiety, by reason of such suffering, should be considered by them, and when he added "only the mental anxiety of the husband by reason of these circumstances," by fair interpretation, we think this could only mean such circumstances as under his charge should be held pertinent, and no doubt the jury so understood it.
The Court is referred by the defendant to Sparkman v. Tel. Co.,130 N.C. 447, as authority for the position that no recovery at all can be had in the case now being considered. In that case, S. B. Sparkman, at Durham, N.C.; at 2:10 o'clock p. m., 11 March, 1904, received a message *Page 95 
from one S. Johnston, Little Rock, Ark., that his brother, E. Sparkman, had died at Little Rock, Ark., on the day before. About two hours later S. B. Sparkman sent or left a message with the company addressed to S. Johnston, Little Rock, Ark., as follows: "Shall we look for him? What are you going to do?" Signed, S. B. Sparkman. The message was never delivered to Johnston, and, on action brought for mental anguish, judgment was given for the defendant. There is no doubt that this case is well decided, and for the reason given by the Court that there was nothing in the language of the telegram nor in anything brought to the attention of the company leading it to believe that mental anguish would result by reason of the failure to deliver the message. "Surely," said the Court, "the distance between Durham and Little Rock, in connection with the brother's death the day before the telegram was delivered to the defendant, would preclude any idea that there was a desire or purpose on the part of the plaintiff to go to Little Rock to attend the funeral services." As a matter of fact, the case does (87) not even disclose whether Johnston would have replied to the message if it had been received by him. The opinion, however, goes on to say that "The rule is well settled in Akard v. Tel. Co. (Texas), and we adopt it. It is that a telegraph company is not to be held liable in compensatory damages for its failure to forward and deliver a message intended to relieve mental anxiety in the mind of the sender."
Akard's case refers for authority to Rowell v. Tel. Co.,75 Tex. 26 [75 Tex. 26], and of this authority the opinion inSparkman's case further says that "Rowell's case seems to be a leading case." The headnote is "Anxiety caused by the failure of a telegraph company to deliver a message conveying information of the improved condition of a sick relative furnishes no ground for recovery against the company for its negligence."
Rowell's case was one where the plaintiff, J. H. Rowell, had received a message saying that his wife's mother "was worse, dangerously sick." He sent a message of inquiry, "How is mother? If no better, Josie comes tonight. Answer at my expense." A reply was forwarded to him, "Mother some better. Doctor says not dangerous." The last message the company failed to deliver, and, on action brought, the Court held as stated that the plaintiff could not recover. In the opinion the Court declares as follows: "We are of opinion that the demurrer was properly sustained. The damage here complained of was the mere continued anxiety caused by the failure promptly to deliver the message. Some kind of unpleasant emotion on the mind of the injured party is probably the result of a breach of contract in most cases, but the cases are rare in which such emotion can be held an element of damage resulting from the breach. For injury to the feelings in such case the courts cannot *Page 96 
give redress. Any other rule would result in intolerable litigation. We regard this case as differing in principle from that of Stewart v. Tel.Co., in which damage for mental suffering has been allowed." This is the length and strength of the opinion in Rowell's case. It would seem to be an arbitrary limitation on the doctrine we are considering, (88) not consistent with former decisions in the same jurisdiction, and the reasoning is far from satisfactory.
If a breach of contract, involving also a breach of public duty, by reason of which a telegraph company fails to relieve an oppressive and harrowing anxiety about the serious illness of a dear relative or the result of a dangerous and threatening surgical operation, cannot be made the subject matter of recovery in actions of this character, the doctrine should be abandoned.
It is not a correct premise to characterize such a grief or anxiety as "some kind of unpleasant emotion in the mind of an injured party incident to a breach of contract in most cases."
Nor is the conclusion convincing: "For injury to feelings in such cases the courts can give no redress. Any other rule would result in intolerable litigation." The limitation laid down in Rowell's case has been criticized by a recent writer and held to be inconsistent with other decisions on this subject. 3 Southerland Dam., section 975, and like comment is made inConnelly v. Tel. Co., 100 Va. 51. The Court does not think the principle laid down in Rowell's case is a sound one, and the opinion in Sparkman'scase, in so far as it adopts such principle, is not approved.
There is some question if Sparkman's case applies to the one we are now considering in any way. This message was sent to prevent anxiety in the plaintiff's mind, and, but for the defendant's default, would have filled its mission, except perhaps for an hour and a half while the plaintiff was up the road in the expectation of meeting his wife.
There is no reversible error and the judgment is
Affirmed.